Argued and submitted September 2, 1987, decision of Court of Appeals affirmed and judgment of trial court reversed March 15, 1988

STATE OF OREGON,
*Petitioner on Review,*

*v.*

KEVIN JOE ATKINSON,
*Respondent on Review.*

(TC No. 85-CR-64; CA A37968; SC S33517)

751 P2d 784

Douglas F. Zier, Assistant Attorney General, Salem, filed the petition and argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Margaret E. Rabin, Assistant Attorney General, Salem.

Diane Alessi, Deputy Public Defender, Salem, argued the cause for respondent on review.

CARSON, J.

Gillette, J., dissented and filed an opinion in which Jones, J., joined.

Peterson, C. J., filed an opinion joining Part II of the dissent.

## CARSON, J.

This case involves the required contents of a notice of revocation of driving privileges by the Motor Vehicles Division (MVD) to a person found to be a habitual traffic offender. We are asked to determine whether the revocation notice issued under *former* ORS 484.718,[1] which failed to state explicitly that the revocation would be stayed pending a requested hearing, is adequate to support a subsequent conviction for felony driving while suspended.[2]

The facts are not disputed. MVD revoked defendant's driving privileges under *former* ORS 484.727,[3] the habitual

---

[1] In October - November 1984, *former* ORS 484.718 (now see ORS 809.620) provided:

"(1) Service of notice required under ORS 484.715 or 484.727 is accomplished either:

"(a) By mailing the notice by certified mail restricted delivery, return receipt requested, to the person's address as shown by division records; or

"(b) By personal service in the same manner as a summons is served in an action at law.

"(2) A notice required under ORS 484.727 shall inform the person of all the following:

"(a) That the person's driving privileges are being revoked as a habitual offender.

"(b) That the person has a right to request a hearing.

"(c) The specific steps that must be taken to obtain a hearing before the division.

"(d) That the person may only obtain a hearing if the person requests, in writing, a hearing within 20 days from the date the notice was sent.

"(e) That the right to a hearing is waived if the person does not request a hearing within the time required.

"(f) The date that the revocation of the person's driving privileges shall take effect unless a hearing is requested."

[2] Although defendant had his driving privileges *revoked,* he was charged with and convicted for driving while *suspended.* There is, in this case, no meaningful distinction between revocation and suspension. *See former* ORS 487.560(6) (now see ORS 811.175 and 811.180).

[3] In October - November 1984, *former* ORS 484.727 (now see ORS 809.640) provided, in part:

"(1) When the division determines from the driving record of a person as maintained by the division that a person is a habitual offender as defined under ORS 484.705, the division shall do the following:

"(a) Revoke the driving privileges of the person.

"(b) Notify the person, as provided under ORS 484.718, of the revocation and of the person's right to a hearing as provided under this section.

"(2) If the person makes a request for a hearing within the time required

offender statute, and *former* ORS 482.440.[4] The notice of revocation was dated October 19, 1984, and, among other things, stated that revocation would take effect for an indefinite time on November 13, 1984 (25 days later). The reverse side of the notice, among other things, informed defendant that he could request a hearing within 20 days of the notice date. Defendant received the notice but did not request a hearing.

In January 1985, during the suspension period, defendant was stopped while driving. Thereafter, he was convicted for felony driving while suspended under *former* ORS 487.560.[5] Defendant appealed and argued to the Court of Appeals that his conviction should be reversed. He contended that the conviction was based upon the 1984 notice of revocation which was inadequate under *former* ORS 484.718. The Court of Appeals agreed and reversed the conviction. *State v. Atkinson,* 82 Or App 287, 728 P2d 564 (1986). We affirm for the reasons set forth below.

Under *former* ORS 484.727, MVD was required to stay revocation of a habitual offender's driving privileges if the person requested a hearing within the time period dictated by *former* ORS 484.718. *Former* ORS 484.727(2). *Former* ORS

---

under ORS 484.718, the division shall stay the effective date of the revocation under this section."

[4] In October - November 1984, *former* ORS 482.440 (now see ORS 809.360) provided:

"Whenever the division or a court has reason under any laws of this state to suspend or revoke the license or permit of any person who has not been issued a current Oregon license or permit to operate motor vehicles or whose license is due to expire during a suspension period, the division or court shall suspend or revoke the right of such person to apply for a license or permit to operate motor vehicles in this state."

[5] In January 1985, *former* ORS 487.560 (now see ORS 811.175 and 811.180) provided, in part:

"(1) A person commits the crime of driving while suspended or revoked if the person drives a motor vehicle upon a highway during a period when the person's license or permit to drive a motor vehicle or the person's right to apply for a license to drive a motor vehicle in this state has been suspended or revoked by a court or by the division or if the person drives a motor vehicle outside the restrictions of an occupational license issued under ORS 482.475 or 484.735.

"* * * * *

"(6) Driving while suspended or revoked is a Class C felony if the suspension or revocation was the result of a finding that the person is an habitual traffic offender under ORS 484.727 * * *."

484.718(2)(f) required that the notice provided by MVD inform the person, whose driving privileges were to be revoked, of "[t]he date that the revocation of the person's driving privileges shall take effect *unless a hearing is requested.*" (Emphasis added.) The Court of Appeals determined that *former* ORS 484.718(2)(f) *implicitly* required that the licensee be explicitly informed that revocation would be stayed pending a requested hearing and that such *explicit* notice was absent from the October 19, 1984, notice given defendant. 82 Or App at 290. The court went on to conclude, under *State v. Tooley,* 297 Or 602, 687 P2d 1068 (1984) and *State v. Adams,* 78 Or App 428, 717 P2d 212 (1986), *affirmed by an equally divided court* 305 Or 330, 751 P2d 784 (1988), that notice was inadequate because "it failed to inform defendant fully of the consequences of his statutory right to a hearing." Consequently, the notice could not support a license suspension and a subsequent driving while suspended conviction. 82 Or App at 291.

In *Tooley,* the notice given under *former* ORS 486.221 informed the recipient that he had 20 days from the date of the notice within which to request a hearing and that the revocation became effective within five days of the notice. We determined that this notice incorrectly communicated that revocation went into effect regardless of a request for a hearing and remained in effect unless and until the person prevailed. 297 Or at 609. The notice was inadequate to inform the person of the pending revocation and of his right to a prerevocation hearing. *Id.*

This case is similar to *Tooley*—resolution of both cases turns solely on statutes. In neither case is an issue of constitutional interpretation involved.

This case is not, however, a *Tooley* case. The decision in *Tooley,* although involving a notice from MVD, was grounded upon different operative statutes and not the statutes relating to habitual offenders. The legislatively-mandated notice requirements in this case, *former* ORS 484.718(2)(f), unlike the statutes in *Tooley,* specifically required the notice of revocation to inform defendant as to the date that his driving privileges would be revoked "unless a hearing is requested."

Defendant was informed that revocation would take

effect on November 13, 1984, and that he had 20 days, or until November 8, 1984, within which to request a hearing. The notice also stated that if a hearing were granted, defendant would be notified of the time, place, procedures and his rights and that the hearing would be held in his county of residence. None of this fairly can be construed as conveying to defendant the statutorily-mandated information which the notice was required to state: The date that the revocation would take effect unless he acted to request a hearing. The notice thus failed to meet the requirements of *former* ORS 484.718 and, as such, could not support a conviction for felony driving while suspended.

The decision of the Court of Appeals is affirmed. The judgment of the trial court is reversed.

**GILLETTE, J.,** dissenting.

I should like to think that, were we doing it for the first time, this court would not today decide *State v. Tooley,* 297 Or 602, 687 P2d 1068 (1984), the way it was decided in 1984. We now find ourselves entangled in a web woven by that decision, a web of our own creation. In *Dooney v. Department of Transportation,* 305 Or 307, 751 P2d 790 (1988), this court begins to try to control the damage done by *Tooley.* In the present case, however, the majority inexplicably backslides. I therefore find myself compelled to dissent.

I

A complete review of *Tooley* is useful in order to appreciate the problems in the present case. *Tooley* began by announcing the question presented: "The question is whether an erroneous license revocation properly may form the basis for a conviction for driving while revoked." *State v. Tooley, supra,* 297 Or at 604. Unfortunately, this is not the question the court actually was to answer.

Like the present case, *Tooley* began as a prosecution for driving while revoked. *Former* ORS 482.430(1)(c).[1] In fact,

---

[1] Former ORS 482.430(1)(c) *(repealed by* Or Laws 1983, ch 338, § 978), now codified at ORS 809.410(4)(a), provided, in pertinent part:

"(1) The division forthwith shall revoke * * * any person's permit or license or right to apply to operate motor vehicles upon receiving a record of the conviction of such person of any of the following offenses:

"* * * * *

"(c) Any crime punishable as a felony with proof of a material element involving the operation of a motor vehicle."

the revocation of Tooley's license was erroneous—the predicate offense involving operation of a motor vehicle was a misdemeanor, not a felony. The notice of revocation Tooley received from the Motor Vehicles Division (Division) was dated April 5, 1982, and stated that the revocation of Tooley's license became effective on April 10, 1982— just five days later. The notice also warned, "Do not drive until you have been advised by the Division that you have been reinstated," and informed Tooley that he had 20 days within which to request a "formal hearing." *Id.* at 605. Tooley did not request a hearing. Sometime after the 20-day period, he was stopped while driving a motor vehicle and the driving while revoked charge was issued.

Consistent with the question we stated that the case involved, Tooley argued in this court that there could be no valid revocation of his license (and, therefore, no valid charge of driving while revoked) because there was no predicate offense. The state argued that Tooley had his chance to contest the validity of his license revocation but lost it when he did not ask for a hearing. The resolution of this argument, something this court seemed at the outset to be bent on achieving—would have been interesting.[2]

Unfortunately, this court's analysis did not meet the parties' arguments. Instead, this court took another approach. It concluded that "receipt of notice [by the revokee] was not intended to prohibit driving." *Id.* at 606. The court's reasons for this conclusion began with the construction of a statute, made a digression into "due process" and concluded with an exercise in psychology.

The pertinent statute, the court held, was *former* ORS 486.221(1),[3] which provided:

---

[2] But not difficult. I have no doubt that the state is entitled to suspend or revoke a driver's license pending a hearing or that the suspension or revocation is binding (even if erroneous) once the time to seek a hearing has passed.

[3] *Former* ORS 486.221(1) was repealed by Oregon Laws 1983, Chapter 338. The repeal was to take effect January 1, 1986, and was part of the recodification of the Oregon Vehicle Code. Oregon Laws 1983, chapter 338, section 356, created a statutory provision containing the same provisions in substantially similar wording. Before the new section came into effect, Oregon Laws 1983, Chapter 338, section 356, was repealed by Oregon Laws 1985, Chapter 669, section 3, and a replacement was enacted by Oregon Laws 1985, Chapter 669, section 4. The replacement provision, which is substantially different from *former* ORS 486.221(1), is codified at ORS 809.440.

"Before the division suspends or revokes the license of any person * * * or continues, modifies or extends a suspension or revocation * * *, the division shall notify the licensee * * * and afford the person an opportunity of a hearing before a representative of the division * * *. The hearing shall be conducted as a contested case in accordance with ORS 183.310 to 183.550. Upon such hearing the division, good cause appearing therefor, may continue, modify or extend such a suspension or revocation of the license * * * or revoke or suspend such license * * *."

The use of "before," the court held, requires the Division "to provide notice and an opportunity for a hearing *prior to* revoking or suspending a license * * *." *Id.* at 607. (Emphasis in original.) That the *hearing,* as opposed to issuance of the notice of a *right to* a hearing, had to precede the effective date of the suspension does not seem to me to follow automatically from the statutory language. I find the language in question to be equally susceptible to the interpretation that the notice of suspension, containing the reasons for the suspension and a statement as to how the recipient might obtain a hearing, would be proper even if the actual hearing were not held until after the suspension or revocation had gone into effect.

Without acknowledging that any interpretation (other than its own) was possible, however, the court went on to explain that the language in question, which was added in 1977, "* * * was intended to bring the statute into compliance with the federal fourteenth amendment [due process] requirements set forth [in an interpretation of those requirements] by the [Oregon] Court of Appeals * * *." *Id.* at 607. That is, the legislature was setting down its best guess as to the future course of constitutional litigation and, as is so often true of the rest of us, missing by a wide margin.[4] In fact, due process requires much less than did *former* ORS 486.221, as this court has interpreted it. *See Dixon v. Love,* 431 US 105, 97 S Ct 1723, 52 L Ed 2d 172 (1977) (applying due process balancing test of *Mathews v. Eldridge,* 424 US 319, 343, 96 S Ct 893, 47 L Ed 2d 18 (1976), to hold that most driver license suspensions can take effect without a pre-suspension hearing); *Mackey v. Montrym,* 443 US 1, 99 S Ct 2612, 61 L Ed 2d 321 (1979)

---

[4] For another example, see the entire history of so-called "implied consent" legislation discussed in *State v. Newton,* 291 Or 788, 636 P2d 393 (1981).

(same); *Illinois v. Batchelder,* 463 US 1112, 103 S Ct 3513, 77 L Ed 2d 1267 (1983) (per curiam) (following *Mackey v. Montrym).*[5]

After this court's conclusion in *Tooley* that *former* ORS 486.221 required a pre-suspension hearing (which Tooley did not receive), the opinion went on to deal with another argument raised by the state:

"\* \* \* The state's argument is that defendant might have received the notice sometime within the five days before the revocation went into effect and might have been able to request a hearing before the effective date of revocation. If such were the case, the state contends, the fact that defendant did not request a hearing when notified now precludes him from challenging the validity of the order.

"We need not decide whether defendant has forgone his opportunity to challenge the revocation. *We find that defendant was never adequately informed of his right to contest the hearing before the revocation went into effect.* The notice informed defendant that he had 20 days from the date of the notice within which to request a hearing. At the same time, the notice indicated that the revocation became effective within five days of the notice. Defendant was informed not to drive until he was reinstated. He was also told that once a revocation goes into effect a $25 fee will be required for reinstatement. *The notice incorrectly communicated that the revocation went into effect regardless of defendant's request for a hearing and remained in effect unless and until defendant prevailed. We find this notice inadequate to inform defendant of a pending revocation and of his right to a pre-revocation hearing on the matter.*

"The state argues that any failure to comply with [*former*] ORS 486.221 was harmless because defendant would not have availed himself of his opportunity to be heard even if the notice accurately reflected his rights. *We cannot decide this*

---

[5] Part of my frustration with *Tooley* comes from the fact that, by the time the 1977 amendment to *former* ORS 486.221 (HB 2640; Oregon Laws 1977, chapter 680, section 1) had completed its legislative journey, the underlying constitutional assumption for it already had been conclusively refuted. *Dixon v. Love,* 431 US 105, 97 S Ct 1723, 52 L Ed 2d 172 (1977) was decided on May 16, 1977; the Governor did not sign HB 2640 until July 26, 1977—over two months later. If, as the *Tooley* court indicated, the legislature was only trying to comply with the requirements of due process, was there not *some* way for the *Tooley* court to construe *former* ORS 486.221 consistently with actual legislative intent, *i.e.,* consistently with *Dixon*? And, if there was not such a way, why did not the court simply stick to the task it originally set for itself in the first sentence of the opinion and entirely avoid adventuring in the statute?

> *case on an assumption about what defendant would have done had he been fully and accurately informed of his avenues of recourse."*

*State v. Tooley, supra,* 297 Or at 609 (emphasis supplied).

Try as I will, I can make no sense out of the foregoing. As long as a notice *correctly* informs a person that he has twenty days in which to challenge the basis for the suspension or revocation of his license, nothing else in such a notice justifies trashing it. The *Tooley* court seems to say that such a person, baffled by the apparent injustice of a suspension that goes into effect before he has a chance for a hearing, will feel so defeated that he will not even request a hearing. Nothing in *former* ORS 486.221 required such a result, either in text or context. (What that statute probably *did* do was make Tooley's suspension ineffective until April 25, 1982, no matter what the notice said. Thus, if Tooley were cited for driving while revoked between April 10 and 20, the citation would fail because the revocation was not yet in effect).

For all of the foregoing reasons, I conclude that, while some of its analysis was correct, the *Tooley* holding and disposition were wrong. Were the same issue before us today as a matter of first impression, I should like to think that we'd know better. And, with due respect, I fear that the present majority opinion is flawed like *Tooley*.

## II

There are two real issues in this case: (1) what did the law require that defendant be told concerning his driver's license revocation, and (2) whether or not the notice defendant received told him all that the legislature expected him to be told, is the notice so defective that defendant goes free?

The majority discusses the first question at 305 Or at 298-300. The pertinent statute is *former* ORS 484.718(2)(f), which directed that the Division give notice to those whose driving privileges were to be revoked of "[t]he date that the revocation of the person's driving privileges shall take effect *unless a hearing is requested."* (Emphasis supplied.) The majority holds that the emphasized phrase must be included in the notice, *i.e.,* the prospective revokee must be told *haec verba* that "your license will be suspended on day ___ unless you request a hearing before that date." I find this reading

strained and hypertechnical. To me, the phrase is simply part of a longer phrase modifying the word "date." So read, the majority's problem vanishes. No one disputes that defendant was told that date. On this basis, I would reverse the Court of Appeals, which was seduced by the pseudo-psychology of *Tooley* into reaching the opposite conclusion.

Even accepting the majority's reading of what a defendant must be told, however, I still conclude that the majority is in error. This notice told defendant the following pertinent information:

(1) The notice was dated October 19, 1984;

(2) That his driving privileges were revoked, "effective 12:01 a.m. 11-13-84," *i.e.,* 23 days from the date of the notice;

(3) That the suspension was based on the fact that defendant was an habitual traffic offender;

(4) That certain classes of people (not including defendant) were not entitled to a hearing;

(5) That any request for a hearing had to be filed within 20 days of the date of the notice, *i.e.,* before the revocation went into effect;

(6) That habitual offender hearings (such as the one defendant had a right to request) would be limited to three issues, none of which is pertinent here;

(7) That any question a recipient might have could be communicated to the Division by mail or telephone.

To me, the fairest reading of the notice as a whole is that the revocation will be stayed pending the hearing. This seems to me to follow from the fact that certain people are not entitled to hearings, *i.e.,* their suspension or revocation will go into effect, no matter what. Absent, moreover, is the warning not to drive that the *Tooley* court found so significant. I would hold the notice adequate on this ground, as well.

I dissent.

Jones, J., joins in this dissent.

**PETERSON, C. J.,** dissenting.

I dissent for the reasons set forth in part II of Justice Gillette's dissent.