Argued and submitted January 10, decision of Court of Appeals reversed and
judgment of circuit court affirmed April 3, 2003

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## MICHAEL WARNER SIMS,
*Respondent on Review.*

### (CC 97CR1061MA; CA A104178; SC S49340)

66 P3d 472

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition for review were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General. With him on the brief on the merits were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Dan Maloney, Deputy Public Defender, Salem, argued the cause for respondent on review. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Before, Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

DE MUNIZ, J.

---

** Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

## DE MUNIZ, J.

The issue in this felony Driving While Revoked (DWR) case is whether defendant can attack collaterally the validity of a ten-year-old administrative order revoking his driver license. Defendant raised the issue by moving to dismiss the DWR charge and by moving to exclude evidence of that order at his trial on the DWR charge. The trial court denied those motions, concluding that defendant could not attack the order collaterally because he had failed to challenge it in the ten years that the order had been in effect. The Court of Appeals, however, reversed and remanded the case on the ground that that court's prior holdings expressly allowed that kind of collateral attack on an underlying administrative order. *State v. Sims*, 176 Or App 484, 31 P3d 1129 (2001). We allowed review and now reverse the decision of the Court of Appeals.

In 1988, the Motor Vehicles Division (MVD) classified defendant as a Habitual Traffic Offender (HTO) under ORS 809.600 (1987), because MVD determined that defendant had been convicted of three or more major traffic offenses in a five-year period. In accordance with that statute, MVD entered an order revoking defendant's driver license.

Nearly ten years later—in 1997—defendant was arrested under ORS 813.010 (1997) for driving under the influence of intoxicants (DUII). Defendant, however, never had challenged his earlier HTO revocation order; neither had he properly sought restoration of his driving privileges under the appropriate statutes. Thus, his driver license had remained revoked over the preceding decade and, as a result, defendant also was charged with felony DWR under ORS 811.182(3) (1997).

Before trial, defendant moved to dismiss the DWR charge and to exclude evidence of his HTO revocation order. He argued that his certified driving record showed that he had been convicted of only two major traffic offenses before the effective date of the 1988 order. The statute, however, required three convictions. The state opposed defendant's motions, arguing that MVD's computerized records went

back only ten years. As a result, the state noted, defendant's driving record was incomplete; it did not encompass three of the five years upon which the revocation order was based. The state also argued that, in any event, defendant had received proper notice that his license had been revoked as a Habitual Traffic Offender and that he never had contested that revocation. The trial court denied defendant's motions. Defendant subsequently stipulated that MVD had revoked his driving privileges before his arrest, and a jury convicted him of felony DWR.

Defendant appealed, assigning error to the denial of his motions to dismiss and to exclude evidence. In the Court of Appeals, defendant argued that he could attack the validity of the HTO revocation order collaterally and that his driving record did not contain the requisite convictions to support the order. *Sims*, 176 Or App at 488. The Court of Appeals agreed. Citing several of its past decisions, that court concluded:

> "Defendant is correct that he may contest the validity of the HTO order in this criminal proceeding. We have previously held that a defendant can attack the convictions underlying an HTO order in a prosecution for felony driving while revoked. *See, e.g., State v. Fritz*, 85 Or App 1, 4, 735 P2d 1228, *rev den* 303 Or 700 (1987); *State v. Hardt*, 81 Or App 607, 726 P2d 953, *adhered to on recons* 83 Or App 221, 730 P2d 1278 (1986), *rev den* 303 Or 74 (1987). As we recently explained in *State v. Riddell*, 172 Or App 675, 21 P3d 128, *rev den* 332 Or 430 (2001), nonjury administrative decisions seldom will have a preclusive effect on subsequent criminal proceedings. Because the fundamental issue here does not substantively differ from that in *Fritz* and *Hardt*, defendant may contest the validity of the HTO order in this criminal proceeding."

*Id.* at 489. The Court of Appeals remanded the case to the trial court to determine the validity of defendant's HTO revocation order. *Id.* This court, in turn, allowed review to consider whether the HTO revocation order indeed is susceptible to collateral attack.

We begin our analysis by examining the text and context of ORS 811.182 (1997), the statute that criminalized defendant's driving with a revoked driver license. In doing so,

our purpose is to discern the intent of the legislature in enacting the statute. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (outlining this court's statutory construction methodology). Under the *PGE* framework, words of common usage are given their "plain, natural, and ordinary meaning." *Id.* at 611. If the intent is clear from the text and context of the statute, then further analysis is unnecessary. *Id.* ORS 811.182 (1997) provided,[1] in part:

"(1)   A person commits the offense of criminal driving while suspended or revoked if the person violates ORS 811.175[2] and the suspension or revocation is one described in this section * * *.

"* * * * *

"(3)   The crime is a Class C felony if the suspension or revocation resulted from any of the following:

"(a)   Habitual offender status under ORS 809.640."[3]

The text of ORS 811.182 (1997) does not require the state, in prosecuting a charge of felony DWR, to consider, much less prove, the validity of defendant's HTO revocation order.[4] Nor

---

[1] The current version of ORS 811.182 is similar to ORS 811.182 (1997), except that a violation based on an HTO-related revocation is now a Class A misdemeanor. ORS 811.182(4)(f) (2001).

[2] ORS 811.175 (1997) provided, in part:

"(1)  A person commits the offense of infraction driving while suspended or revoked if the person does any of the following:

"(a)  Drives a motor vehicle upon a highway during a period when the person's driving privileges * * * have been suspended or revoked in this state by a court or by the Department of Transportation."

[3] In 1988, when MVD concluded that defendant was a Habitual Traffic Offender and revoked his driver license, ORS 809.640(1) and (2) (1987) provided:

"(1)  When the division determines from the driving record of a person as maintained by the division that a person's driving privileges are required to be revoked as a habitual offender under ORS 809.600, the division shall do the following:

"(a)  Revoke the driving privileges of the person.

"(b)  Notify the person, as provided under ORS 809.620, of the revocation and of this person's right to a hearing as provided under this section.

"(2)  If the person makes a request for a hearing within the time required under ORS 809.620, the division shall stay the effective date of the revocation under this section."

[4] It is important to note that, by the time that defendant was charged with DWR, Oregon statutes had afforded him the opportunity for at least three

does it provide defendant with an affirmative defense based on proof of the order's invalidity. Instead, the statute requires the state to prove only that (1) MVD had revoked defendant's license based on his HTO status; and (2) defendant drove a motor vehicle when the revocation order was in effect.

Based on the text of ORS 811.182 (1987), it appears that the legislature intended to criminalize the violation of an HTO revocation order without requiring the state to revisit the convictions underlying that order.[5] The Court of Appeals' contrary decision, however, appears to be premised on the case law that, over the years, has interpreted the various statutes authorizing driver license suspensions and revocations. In particular, the parties dispute the legal effect of this court's decision in *State v. Tooley*, 297 Or 602, 687 P2d 1068 (1984).[6] We turn to that question.

In *Tooley*, the defendant's driver license was erroneously revoked. In its revocation notice to the defendant, MVD informed him that he was not permitted to drive until MVD

---

evidentiary hearings in which the state had the burden of proving every element of a major motor vehicle-related offense. ORS 809.600 (1987). The statutes also had given him an administrative opportunity to challenge any convictions erroneously attributed to him. Specifically, the statute afforded him a contested case hearing in which the state was required to prove that (1) the driving record at issue was indeed defendant's; (2) the convictions on the record were indeed defendant's; and (3) defendant had received proper notice of the revocation proceedings. *See* ORS 809.640 (1987) (setting out those provisions). The statutes also gave defendant the right to challenge that administrative outcome in the Court of Appeals. *See* ORS 183.482 (1987) (providing for Court of Appeals review).

[5] Defendant maintains that the state did not preserve that argument for review in this court. Before the Court of Appeals, the state argued that defendant could not attack collaterally the basis for the HTO revocation because defendant had been provided the required notice and did not pursue an administrative appeal of the order revoking his license. On review, the state argues that defendant cannot attack collaterally the HTO revocation because the state proved the elements of the crime and defendant no longer has any procedural method for attacking the underlying administrative order that revoked his license. We conclude that the two arguments are sufficiently related such that the state preserved the issue for review. *See Tarwater v. Cupp*, 304 Or 639, 644 n 5, 748 P2d 125 (1988) (petitioner cannot argue or raise issue that was not before Court of Appeals).

[6] *Tooley* was not cited in the Court of Appeals decision below. It was, however, interpreted by that court in *State v. Hardt*, 81 Or App 607, 726 P2d 953, *adhered to on recons*, 83 Or App 221, 730 P2d 1278 (1986), *rev den*, 303 Or 74, 734 P2d 354 (1987), to allow a defendant to attack his HTO revocation order collaterally in a subsequent criminal proceeding. As a result, the Court of Appeals decisions that since have flowed from *Hardt* including the one at issue here—have, wittingly or not, relied on *Tooley* as their primary source.

reinstated his license. 297 Or at 604-05. That notice, however, incorrectly communicated to the defendant that his license revocation would become effective regardless of whether he requested a hearing and would remain in effect unless and until he prevailed in such an endeavor. *Id.* at 609. Shortly thereafter, the defendant was stopped while driving and was charged with, and convicted of, DWR. *Id.* at 605.

On review, the state argued that the defendant was bound to obey the license revocation until otherwise notified by MVD. *Id.* This court disagreed, concluding that "defendant was never adequately informed of his right to contest the hearing before the revocation went into effect." *Id.* at 609. This court went on to conclude that, because defendant had not received adequate notice of his statutory right to a prerevocation hearing, the revocation was erroneous and defendant's operation of a motor vehicle was not unlawful. Accordingly, this court reversed the defendant's DWR conviction.

This court's holding in *Tooley* is a limited one and does not provide support for the kind of collateral attack on the HTO revocation order that defendant seeks in this case. That is so because, unlike the defendant in *Tooley*, defendant here does not argue that the notice of his license revocation was defective or that he was denied a prerevocation hearing.

To reiterate, *Tooley* does not authorize, in every case, a collateral attack on the administrative order underlying a criminal prosecution from driving with a suspended or revoked driver license. A criminal defendant's ability to attack collaterally the validity of an underlying suspension or revocation order must arise from the legislature's intent to permit such an attack.

Here, we conclude that the legislature intended only that the state prove that MVD had revoked defendant's license and that defendant drove a motor vehicle when the revocation order was in effect. The legislature did not intend to permit a defendant to attack the HTO revocation order collaterally in a prosecution for DWR under ORS 811.182 (1997).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.