Argued and submitted February 27, reversed and remanded October 15, respondent's petition for reconsideration filed October 27 allowed by opinion December 10, 2008
See 224 Or App 451, 199 P3d 317 (2008)

# STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

# ANTHONY BURKE JONES,
*Defendant-Respondent.*

Lane County Circuit Court
200210573; A132275

195 P3d 78

David D. Thompson, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Marc D. Brown, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

LANDAU, P. J.

### LANDAU, P. J.

Defendant was charged in Lane County with felony driving while suspended (FDWS). ORS 811.182(3) (2001).[1] He moved to suppress evidence of a prior order of the Department of Transportation, Driver and Motor Vehicle Services Division (DMV), suspending his driving privileges on the ground that the suspension order was unlawful. The trial court granted the motion. The state appealed, arguing that the trial court had, in effect, permitted defendant to collaterally attack the prior DMV suspension order. We reversed and remanded, but on slightly different grounds. *State v. Jones*, 199 Or App 424, 112 P3d 356 (2005), *rev den*, 340 Or 34 (2006) (*Jones I*). On remand, defendant again moved to suppress the prior DMV suspension order, and the trial court granted the motion. The state appeals a second time. We again reverse and remand.

The relevant facts are not in dispute. They are also, unfortunately, not simple. We begin with the facts that we described in the first appeal:

"In 2001 defendant was charged in Coos County with two counts of assault in the third degree 'by means of a Yamaha 4-wheeler, a dangerous weapon[,]' and one count of driving while under the influence of intoxicants (DUII). Defendant entered into a plea agreement with the state in which he agreed to plead guilty to DUII and to assault in the fourth degree as a lesser included offense of one of the assault in the third degree counts. Pursuant to the agreement, defendant admitted in court that he recklessly caused serious physical injury to the victim. Defendant did not admit that he was operating a motor vehicle at the time that he committed the assault. The trial court thereafter stated, during the hearing on the change of plea, 'On that Count I, I'll change that so it's clear on the record the charge of Assault in the Fourth Degree, I deleted all the words after [the victim's name].' The effect of the court's ruling was to strike the language in the charging instrument alleging that defendant committed assault in the third degree by means of 'a Yamaha 4-wheeler, a dangerous weapon[.]'

---

[1] We set out the text of ORS 811.182 (2001) below. All references to statutes are to the versions in effect at the relevant time, unless otherwise noted.

"Subsequently, in an order dated November 14, 2001, DMV suspended defendant's driving privileges and his right to apply for driving privileges because 'you were convicted of Assault 4 resulting from the operation of a motor vehicle.' "

*Jones I*, 199 Or App at 426-27 (brackets in original). Defendant did not seek administrative review of the 2001 DMV suspension order.

In 2002, defendant was charged in this case in Lane County with FDWS based on the fact that he had been operating a motor vehicle on a public highway while still subject to the 2001 DMV suspension order. He moved to suppress evidence of the suspension order on the ground that, because the reference to the "Yamaha 4-wheeler" had been struck from the charging instrument in the Coos County case, the resulting assault conviction had not included a determination that he was operating a motor vehicle on premises open to the public when that assault occurred. As we have noted, the trial court granted that motion. It did so on the ground that, the reference to the "Yamaha 4-wheeler" having been struck from the charging instrument in the criminal case, DMV had no authority later to suspend defendant's driving privileges.

The state appealed, arguing that defendant could not collaterally attack the validity of the DMV suspension order on which his Lane County FDWS charge is based. The state conceded that it had not preserved that contention before the trial court. It nevertheless contended that we should review the matter as plain error, based on the Supreme Court's decision in *State v. Sims*, 335 Or 269, 66 P3d 472 (2003), which had been published after the trial court's decision to grant defendant's motion. In the alternative, the state argued that, even if it were permissible to collaterally attack such an order, the trial court erred in concluding that DMV's authority in issuing a suspension order is limited to considering the facts that appear on the face of a charging instrument. *Jones I*, 199 Or App at 428.

We concluded that the state had not preserved the broader issue whether defendant could collaterally challenge the 2001 DMV suspension order and that the issue was not

subject to review as plain error. We acknowledged that, in *Sims*, the Supreme Court held that a different provision in an earlier version of ORS 811.182—the 1997 version of the provision criminalizing driving while suspended or revoked and making it a felony if the suspension or revocation "resulted from" the defendant's "[h]abitual offender status under ORS 809.640"—did not permit a defendant to collaterally attack the validity of the suspension. We noted, however, that the text of the provision of ORS 811.182 at issue in this case was "qualitatively different" from the text at issue in *Sims*; accordingly, the issue was not beyond dispute. *Jones I*, 199 Or App at 429-32. *See also State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (unpreserved error is plain where claimed error is one of law, it is obvious and not reasonably in dispute, and it appears on the face of the record, without requiring the court to choose between competing inferences).

We accepted the state's alternative argument, however. We concluded that the trial court had erred in determining that DMV's suspension order was invalid solely by reason of the fact that, in the charging instrument in the Coos County assault case, the reference to the assault occurring by means of a motor vehicle, although still legible, had been crossed out. *Jones I*, 199 Or App at 432-33. We reversed and remanded for reconsideration of whether the entire record before DMV supported its suspension order. In remanding, we explicitly stated that "our ruling does not prohibit the parties on remand from litigating the issue of whether, under the circumstances of this case, defendant can make a collateral attack against DMV's order." *Id.* at 433-34.

On remand, defendant again moved to exclude evidence of DMV's suspension order. This time, the state argued that defendant cannot, as a matter of law, collaterally attack the validity of the 2001 DMV suspension order. The trial court rejected that contention and concluded both that defendant was entitled to collaterally attack the order and that the record on which DMV based its order was not adequate to support it.

As to the former, the trial court reasoned that, when we explained in *Jones I* why the changes between the 1997 and 2001 versions of the statute meant that *Sims* did not

plainly preclude defendant from collaterally attacking the DMV suspension order, we effectively decided that, in fact, defendant *can* collaterally attack the suspension order. Specifically, the trial court explained that, in contrast with the 1997 version of the statute that was at issue in *Sims*, the 2001 version of the statute required the state to prove that the suspension resulted from a conviction for any degree of assault "resulting from the operation of a motor vehicle," thereby demonstrating that a defendant may collaterally attack the underlying suspension order on the ground that that circumstance was not present. As to whether sufficient evidence in the Coos County record supported the order, the trial court reasoned that, considering that the portion of the indictment in the Coos County case stating that the assault occurred by means of a motor vehicle had been crossed out, and considering that no other document in the record mentioned a motor vehicle, DMV had had no permissible basis from which to infer that the conviction involved a motor vehicle.

On appeal, the state argues that the trial court erred in respect to both of its determinations. As to whether defendant can collaterally attack DMV's suspension order, the state argues that the trial court read too much into our opinion in *Jones I*; specifically, the state argues that, when we noted the differences between the 1997 and 2001 statutes, we did so only for the purpose of articulating what reasonably *could be* argued about the legal significance of those textual differences, for the purposes of determining whether it was appropriate to review the matter as plain error. We did not, the state contends, purport to hold definitively what the 2001 version of the statute meant.

As to whether ORS 811.182 (2001) actually does permit defendant to collaterally attack the prior DMV suspension order, the state contends that, notwithstanding the differences between the respective provisions of ORS 811.182, the analysis set out by the Supreme Court in *Sims* suggests that the provision applicable here likewise does not provide for a collateral attack against an underlying suspension order. Specifically, the state argues that, like the statute at issue in *Sims*, the 2001 version of ORS 811.182 requires only that the state prove that the suspension of a person's driving

privileges resulted from a status or circumstance that DMV previously had determined—here, that the person had been convicted of a specified category of offense. *See former* ORS 809.410(38)(a) (1999) (providing that, "[u]pon receipt of a record of conviction for assault in the second, third, or fourth degree, [DMV] shall suspend the driving privileges * * * of the person convicted").[2] The state notes that, had the legislature intended to require the state to prove, in a later prosecution for FDWS, that DMV's suspension was valid, it could have, but did not, insert the word "lawfully" or "validly" before the phrase "suspended or revoked." The state points out that the Supreme Court reached a similar conclusion in *State v. Probst*, 339 Or 612, 124 P3d 1237 (2005), in regard to the validity of predicate convictions in a prosecution for felony DUII, and in *Bailey v. Lampert*, 342 Or 321, 153 P3d 95 (2007), in regard to the validity of predicate convictions for purposes of the crime of felon in possession of a firearm.

The state also argues that the existence of separate, statutorily prescribed procedures for challenging DMV's suspension order provides further support for its view that a defendant cannot challenge such an order in the context of a prosecution for FDWS. *See former* ORS 809.410(38)(f) (1999) (person is entitled to administrative review of suspension based on conviction for assault); *former* ORS 809.440(2)(b), (e) (1999) (providing that it is a defense to a suspension action that the conviction on which the suspension is based was for an offense not involving a motor vehicle and providing for judicial review after administrative review of suspension order).

In the alternative, the state argues that, even assuming that defendant can collaterally attack the validity of DMV's order, the trial court erred in determining that the order was invalid. The state first proposes that, because the standard of review on judicial review of DMV suspension orders is for substantial evidence and errors of law, the same standard properly applied to the trial court's review of the

---

[2] Effective January 1, 2002, *former* ORS 809.410(38) was renumbered as *former* ORS 809.410(37). Or Laws 2001, ch 176, §§ 5, 9. The entire statute was repealed in 2003 and was reenacted as ORS 809.411. Or Laws 2003, ch 402, §§ 3, 6a, 43.

order and applies to this court's review of it on appeal. According to the state, substantial evidence in the record before DMV supported the order. As to the indictment in the Coos County case, the state argues that, although the reference to a motor vehicle had been deleted and defendant's fourth-degree assault conviction therefore did not involve a motor vehicle as a matter of law, the offense nevertheless involved a motor vehicle as a factual matter and the latter circumstance was sufficient to support DMV's suspension order.

Defendant first responds that the question whether DMV properly suspended his driving privileges is irrelevant because the suspension based on his assault conviction expired before he committed the conduct on which his FDWS conviction is based. Defendant next argues that we already decided in *Jones I* that he was entitled to collaterally attack DMV's order, and that holding is the "law of the case" for purposes of this appeal. In the alternative, defendant argues that, even assuming that the state can again raise that issue, the relevant version of ORS 811.182 requires that the state prove that a person's suspension was based on a conviction involving operation of a motor vehicle and therefore demonstrates that such a collateral attack is permissible. Defendant also argues that, consistently with *State v. Tooley*, 297 Or 602, 687 P2d 1068 (1984), a collateral attack is authorized here because, where the trial court in the Coos County assault case informed him that his driving privileges would be suspended for 90 days, he did not receive adequate notice of the one-year suspension that DMV actually imposed. Finally, defendant argues that DMV could not properly infer from the record provided to it that his assault conviction involved the operation of a motor vehicle and that, accordingly, substantial evidence was lacking to support the order.

In reply, the state argues that defendant is precluded from arguing that the 2001 DMV suspension order had expired before the offense in this case occurred. According to the state, defendant did not advance that contention below and, if he had, the state would have developed a factual record that would have defeated the claim. Under the circumstances, the state contends, defendant cannot rely on that contention as an alternate basis for affirmance.

■    As an initial matter, the state is correct that defendant did not advance the contention that the prior order had expired by the time he committed the offense at issue in this case. Because the state contests that, in fact, the order had expired, and because the state was precluded from developing a record in support of that position, defendant is precluded from asserting it as a basis for affirmance for the first time on appeal. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

2.    We also summarily reject defendant's contention that our prior opinion actually decided that he can collaterally attack the 2001 DMV suspension order and that our prior opinion is "law of the case" on that issue. The issue whether, as a matter of law, defendant may collaterally attack the earlier suspension order was not before us. What was before us was whether the state—which had not preserved the collateral attack issue before the trial court— could assert that issue for the first time on appeal as "plain error." We did not hold that the state was incorrect in asserting that defendant could not collaterally attack the order. We simply held that "we are not persuaded that the claimed error is obvious and not reasonably in dispute so as to permit us to review the state's assignment of error as error apparent on the face of the record." *Jones I*, 199 Or App at 430.

■    We turn, then, to the substantive correctness of the trial court's legal determination that defendant was entitled to collaterally attack the suspension order. Because it is instructive, we begin with the Supreme Court's decision in *Sims*. The 1997 version of ORS 811.182 at issue in that case provided, in part:

"(1)    A person commits the criminal offense of driving while suspended or revoked if the person violates ORS 811.175 and the suspension or revocation is one described in this section * * *.

"* * * * *

"(3)    The crime is a Class C felony if the suspension or revocation resulted from any of the following:

"(a)    Habitual offender status under ORS 809.640[.]"[3]

---

[3] A habitual traffic offender was a person who had been convicted of three or more major traffic offenses in a five-year period. ORS 809.600 - 809.660 (1997).

In *Sims*, the defendant was convicted of felony driving while revoked based on a revocation order issued by what was then called the Motor Vehicles Division (MVD) based on his status as a habitual traffic offender. On appeal, the defendant argued that he was entitled to collaterally attack the validity of the MVD revocation order and that the record did not support the existence of three or more major traffic offense convictions. 335 Or at 272. Analyzing the text of ORS 811.182, the Supreme Court noted that the statute "d[id] not require the state, in prosecuting a charge of felony [driving while revoked (FDWR)], to consider, much less prove, the validity of" the order revoking the defendant's driving privileges. Rather, the statute, by its terms, required the state to prove only two things: (1) that MVD had revoked his driving privileges on that basis, and (2) that he had driven a motor vehicle while the revocation order was in effect. 335 Or at 273-74.

The court also stated that it was "important to note" that, by the time that the defendant was charged with FDWR, he had had the opportunity not only to contest, in the earlier prosecutions themselves, his guilt of the underlying prior offenses that gave rise to his habitual offender status, but also to seek administrative and judicial review of the MVD order revoking his driving privileges. *Id.* at 273 n 4. Based on its analysis of the text and context of ORS 811.182, the court concluded that the legislature did not intend to permit a defendant to collaterally attack MVD's revocation order in the course of the prosecution for FDWR. *Id.* at 274-75.

We apply a similar analysis here; that is, we analyze the text of ORS 811.182 (2001) in context, to determine the legislature's intent regarding collateral attacks. If the legislature's intent is clear, further analysis is unnecessary. *See Sims*, 335 Or at 272-73.

ORS 811.182 (2001) provided, in part:

"(1) A person commits the offense of criminal driving while suspended or revoked if the person violates ORS 811.175 and the suspension or revocation is one described in this section * * *.

"* * * * *

"(3)   The crime is a Class B felony if the suspension or revocation resulted from any degree of murder, manslaughter, criminally negligent homicide or assault resulting from the operation of a motor vehicle or if the revocation resulted from a conviction for felony driving while under the influence of intoxicants."

Thus, in describing the particular form of FDWS at issue here, ORS 811.182(3) (2001) used the phrase "the suspension or revocation resulted from," followed by a description of a particular basis or category of suspension or revocation. To that extent, it is identical to the provision analyzed by the court in *Sims*.

In the provision at issue here, however, the description of the basis or category of the suspension or revocation is somewhat more detailed than the equivalent description in *Sims*. Specifically, in contrast to the provision at issue in *Sims*, which simply referred to "[h]abitual offender status under ORS 809.640," the category of suspension or revocation at issue here is qualified in two ways: first, it is limited to convictions for one of the enumerated crimes, and, second, the crime must have been committed by way of ("resulting from") the operation of a motor vehicle. The question thus becomes whether that more detailed description involving, in effect, two layers of qualifications or requirements demonstrates that the state is required to prove, in the current FDWS prosecution, the existence of either or both of those qualifications or requirements.

We conclude not. That is because, notwithstanding the more detailed or qualified category of suspension giving rise to a prosecution for FDWS under ORS 811.182(3) (2001), that provision has the same basic structure and function as the provision at issue in *Sims* and, indeed, many of the other equivalent provisions of ORS 811.182. In particular, it establishes a manner of committing the crime of driving while suspended or revoked by (1) referring to a suspension or revocation, (2) describing a particular basis or category of suspension or revocation, and (3) providing that the former "resulted from" the latter (or, for some categories, that the former was one "resulting from" the latter). We perceive no principle by which we could conclude that some of those provisions establishing ways of committing the crime of driving

while suspended or revoked impart a requirement that the state prove the existence of the facts or circumstances comprising the basis or category of the suspension or revocation, while others do not. *Cf. PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (where the legislature uses the same term in related statutes, the court infers that the term has the same meaning). Rather, we conclude, consistently with *Sims*, that the state must prove only the suspension or revocation itself. Further supporting that understanding is the fact that, like the defendant in *Sims*, defendant in this case had multiple opportunities to contest the categorical basis of DMV's suspension order.

Again, the Supreme Court concluded in *Sims* that the statutory reference to a revocation that "resulted from" habitual offender status required the state to prove only that such a revocation was in effect; the legislature did not intend to permit the defendant to collaterally challenge the validity of the revocation. It follows that the legislature's reference to a suspension that "resulted from" an assault involving the operation of a motor vehicle also requires the state to prove the existence, but not the validity, of that suspension and that, conversely, defendant is not entitled to challenge its validity.

■ As noted, relying on *Tooley*, defendant alternatively argues that he is entitled to collaterally attack DMV's suspension order because, where the Coos County court initially notified him in writing that his driving privileges would be suspended for 90 days, he did not receive adequate notice that the suspension period would extend for one year. For the following reasons, we disagree.

In *Tooley*, MVD sent the defendant a notice of revocation of his driving privileges based on MVD's erroneous understanding that the defendant had been convicted of a felony involving the operation of a motor vehicle. The notice stated that the revocation would take effect five days from the date of the notice and informed the defendant that he had 20 days from the date of the notice in which to request a hearing. The defendant did not request a hearing. He later was convicted of driving while revoked. 297 Or at 604-05. On

appeal, the Supreme Court explained that, under the relevant statute, MVD was required to afford a driver notice and an opportunity for hearing *before* suspending or revoking the driver's driving privileges. *Id.* at 607-08.[4] The court concluded that the notice received by the defendant in that case violated those statutory requirements by informing him that his driving privileges would be revoked on the stated date regardless of whether he requested a hearing and would be reinstated only if he prevailed at the hearing. *Id.* at 609. Because MVD's revocation of the defendant's driving privileges was procedurally inconsistent with the applicable statute, the court reversed his conviction for driving while revoked. *Id.*; *see also State v. Atkinson*, 305 Or 295, 299, 751 P2d 784 (1988) (applying similar analysis under later version of applicable suspension or revocation notice statute; noting that the resolution of both *Tooley* and the instant case "turn[ed] solely on statutes").

Thus, as *Tooley* and related cases make clear, whether defendant received adequate notice of his suspension is a function of the applicable procedural provisions. As previously described, defendant's driving privileges were suspended in November 2001 and, under *former* ORS 809.410(38)(f) (1999), the suspension was of a type that is subject to administrative review. The applicable procedural provisions therefore are found in ORS 809.440(2) (1999).[5]

Administrative review is an "informal administrative process." ORS 409.440(2)(a) (1999). It is a defense to DMV's action if the person can establish that the conviction on which the suspension is based did not involve a motor vehicle and the suspension is one that is permitted only if the

---

[4] The suspension/revocation notice and hearing statute at issue in *Tooley*, *former* ORS 486.221, was intended to comply with the perceived requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Tooley*, 297 Or at 608 (so explaining). However, by the time that the statute went into effect, the United States Supreme Court had decided in *Dixon v. Love*, 431 US 105, 97 S Ct 1723, 52 L Ed 2d 172 (1977), that, consistently with the Due Process Clause, most suspensions of driving privileges do not require a presuspension hearing. *See State v. Atkinson*, 305 Or 295, 302-03, 751 P2d 784 (1988) (Gillette, J., dissenting) (so noting).

[5] Although other provisions of the motor vehicle code were amended by the 2001 legislature and some of those amendments went into effect immediately, ORS 809.440 was not amended by the 2001 legislature.

offense involves a motor vehicle; that the suspension is based on an out-of-state conviction that is not comparable to an Oregon offense; or that the records relied on by DMV identify the wrong person. ORS 409.440(2)(b) (1999). As particularly pertinent here, the administrative review process is exempt from, among other requirements, the notice requirements in ORS 409.430, and a suspension subject to administrative review "shall not be stayed during the administrative review process." ORS 809.440(2)(d) (1999); ORS 809.440(4)(a) (1999).

In this case, defendant was provided with a notice from DMV dated November 14, 2001. The notice informed him that his driving privileges would be suspended beginning November 19, 2001; that he could apply for reinstatement of his privileges one year after being released from jail or prison; and that he was entitled to administrative review of DMV's action, including review of the issue whether his suspension "resulted from a conviction for an offense which involved the operation of a motor vehicle and the department's action is permitted only if the offense involves a motor vehicle." The notice also informed him that the suspension would remain in effect pending the outcome of the administrative review process. That notice was consistent with the applicable statutory requirements.

Nor was the sufficiency of the notice provided to defendant by DMV vitiated in any cognizable respect by the fact that the trial court previously—on October 18, 2001— had provided defendant with a form showing that his suspension would extend for three months. Thus, even assuming that *Tooley* stands for the proposition that a defendant may collaterally attack a DMV suspension order in the context of a prosecution for driving while suspended on the ground that the defendant did not receive the notice of the suspension to which he or she was entitled by statute, that proposition does not assist defendant here.

Because we conclude that DMV's order suspending defendant's driving privileges was not subject to collateral attack in his prosecution for FDWS, we need not—and do not—decide whether substantial evidence in the record

before DMV supported that order and whether that order was correct as a matter of law.

Reversed and remanded.