Argued and submitted March 29, 2000, affirmed November 21, 2001

# STATE OF OREGON,
*Appellant,*

*v.*

# JOSE ALEJANDRO RODARTE,
*Respondent.*

CF980340, CF980144; A105240 (Control), A105284
(Cases Consolidated)

35 P3d 1116

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Andy Simrin, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

■    In this consolidated appeal arising out of two charges of felony driving while suspended (FDWS), the state challenges orders excluding the evidence that defendant's driving privileges were suspended at the time in question. The only issue presented is whether ORS 809.410(4) authorizes suspension of a driver's license for a felony vehicular conviction[1] that has been reduced to a misdemeanor pursuant to ORS 161.705(1). The trial court concluded that it does not. We agree, and affirm.

■    The relevant facts are procedural in nature. Defendant previously pleaded guilty to unauthorized use of a vehicle (UUV), which is a Class C felony. After accepting the plea, the trial court exercised its discretion pursuant to ORS 161.705(1) to enter judgment on the conviction as a misdemeanor. In entering judgment, the trial court also ordered that defendant's driving privileges be suspended for one year. When the Department of Transportation (Department) received notice of the UUV conviction, it entered an administrative order revoking defendant's driving privileges for one year. During the one-year period of suspension, defendant allegedly twice drove a motor vehicle, which resulted in the FDWS charges in these cases.[2] Before trial, defendant collaterally attacked the validity of the suspension order and, on the basis of that attack, moved to exclude the evidence of it. More specifically, defendant asserted that ORS 809.410(4) does not authorize the suspension of driving privileges based on a felony vehicular conviction when a sentencing court

---

[1] Throughout this opinion, we use the terms "felony vehicular conviction" as a shorthand for the reference in ORS 809.410(4) to a "felony conviction with proof of a material element involving the operation of a motor vehicle."

[2] The sentencing court indicated on the judgment form that defendant's driving privileges were "suspended/revoked." The Department, however, "revoked" defendant's driving privileges, as the language of the pertinent statute requires. *See* ORS 809.410(4). Ultimately, in the indictments for FDWS, defendant was charged with driving during a period in which his privileges were suspended by the circuit court. Neither party attributes significance to the distinction between the Department's order of revocation and what the indictment treats as the sentencing court's order of suspension. Given the issue on appeal, we likewise conclude that the distinction is not important for present purposes.

chooses, pursuant to ORS 161.705(1), to reduce the conviction to a misdemeanor.[3] The trial court agreed, and granted the motions. Because the issue turns on the meaning of the applicable statutes, we review the trial court's ruling for errors of law, following the interpretative methodology outlined in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

This case, like most cases involving an issue of statutory interpretation, requires us to determine the meaning of a particular word or phrase in a particular statute. But in addition to that, it requires us to assess the interplay between two statutes and the policies that they embody. In particular, we must consider whether ORS 809.410(4), which requires revocation of driving privileges for felony vehicular offenses, applies when a felony is reduced to a misdemeanor pursuant to ORS 161.705(1).

We begin with ORS 809.410(4) and its provisions for revocation by the Department following a felony vehicular offense. It provides, in part:

"Any felony conviction with proof of a material element involving the operation of a motor vehicle constitutes grounds for revocation of driving privileges. The following apply to this subsection:

"(a) Upon receipt of a record of conviction for an offense described in this subsection, the department shall revoke the driving privileges or right to apply for driving privileges." ORS 809.410(4).

Such a revocation is not achieved exclusively through the Department's administrative authority, however. Rather, if revocation or suspension is required under ORS 809.410, the sentencing court also is required to order the revocation or suspension for the required time period "at the time of conviction." ORS 809.240(1)(a).

In many circumstances, the application of ORS 809.410(4) is straightforward. Often, when a defendant pleads to or is found guilty of a felony vehicular offense, the

---

[3] On appeal, the state expressly does not challenge defendant's ability to collaterally attack the validity of the underlying order in this prosecution because that issue was not raised below.

trial court enters judgment on the offense as a felony, either because the offense is not a Class C felony and therefore cannot be reduced to a misdemeanor or because the trial court does not consider misdemeanor treatment appropriate in the particular instance. In those circumstances, the factual determination of guilt, as represented by the plea or verdict, is identical to the legal adjudication, as represented by the judgment of conviction. Thus, no issue arises as to whether ORS 809.410(4) requires revocation in such an instance; it plainly does.

The problem in this case arises, however, because the trial court in this circumstance could and did opt to treat defendant's felony conviction as a misdemeanor pursuant to ORS 161.705. Under that statute, for persons "convicted" of a Class C felony, a trial court has discretion to enter a judgment of conviction for a Class A misdemeanor if the court believes that felony treatment would be "unduly harsh."[4] Thus, as occurred in this case, a person who is factually guilty of a felony vehicular offense may be legally adjudicated to be guilty of only a misdemeanor offense. The question then becomes whether the legislature, in providing for any vehicular "felony conviction" to be grounds for revocation or suspension, intended that consequence to follow from the *factual determination* of guilt for such an offense, or from the *legal adjudication* of guilt, as reflected by the judgment entered in the case. If the factual determination of guilt triggers the revocation, then entry of judgment as a misdemeanor does not avoid that consequence. Conversely, however, if the legislature intended the conviction to be the entry of judgment, then revocation is not authorized when the offense is reduced to a misdemeanor.

---

[4] ORS 161.705(1) provides, in part:

"[T]he court may enter judgment of conviction for a Class A misdemeanor and make disposition accordingly when:

"(a) A person is convicted of any Class C felony; [and]

"* * * * *

"(e) The court, considering the nature and circumstances of the crime and the history and character of the defendant, believes that it would be unduly harsh to sentence the defendant for a felony."

The legislature's choice of terms does little to provide an answer. The word "conviction" is often vexing, precisely because it has a number of potential meanings. *See generally State v. Dintelman,* 112 Or App 350, 352, 829 P2d 719 (1992). The two most common meanings are the two we must decide between here: (1) a finding of guilt by jury verdict or plea; and (2) an adjudication of guilt by formal judgment. *See Vasquez v. Courtney,* 272 Or 477, 480, 537 P2d 536 (1975) (citing representative cases); *see also In re Sonderen,* 303 Or 129, 134, 734 P2d 348 (1987) (conviction determined to mean judgment); *State v. Smith,* 298 Or 173, 691 P2d 89 (1984) (conviction determined to mean factual determination of guilt). The statute itself does not define the term, and nothing in the substance of ORS 809.410(4) makes one meaning more likely than the other. Thus, as a matter of plain text, the reference to "felony conviction" plausibly could assume either meaning, rendering it ambiguous.

The parties agree. They therefore turn to context to aid in understanding the legislature's intent. *See PGE,* 317 Or at 610-11 (a court first looks to text and context in interpreting a statute). Defendant places considerable reliance on subsection (4)(a) of the statute, set out above, which requires the Department to revoke a defendant's driving privileges upon receipt of the "record of conviction." Without offering any analysis or support for the proposition, defendant asserts that the record of conviction is "of course, the judgment." In fact, however, that proposition is not obvious at all. The legislature did not refer to the "record of judgment," as it could have if that is what it meant, and as it has before. *See Smith,* 298 Or at 181-82 (discussing *former* ORS 45.600, which provided for proof of conviction by "record of the judgment," and holding that the change of reference to "public record" was intended to encompass factual adjudication). Moreover, defendant's argument overlooks ORS 810.370, which expressly describes what records a court is to provide to the Department for vehicle code offenses. The statute specifically directs the court to forward "the record of conviction containing the date of any offense, any arrest and conviction." ORS 810.370(2). In effect, what a court sends to the Department is akin to an abstract of the charge and conviction, and not merely the judgment. For both reasons, the reference to the

"record of conviction" in subsection (4)(a) does not help in determining whether conviction means the factual determination of guilt of the charge or the legal judgment entered by the court.

The state points us to a different contextual clue to assist in understanding which meaning to give the term "conviction." Specifically, the state relies on ORS 811.182(3)(c) (1997),[5] which provides the penalty for driving in violation of a revocation order issued based on a felony vehicular conviction. Under its provisions, driving while suspended or revoked is a felony offense if the revocation or suspension order resulted from "[a]ny crime *punishable* as a felony with proof of a material element involving the operation of a motor vehicle." ORS 811.182(3)(c) (1997) (emphasis added). The state argues, and we agree, that the two statutes are context for one another because they operate as parallel provisions, with ORS 809.410(4) requiring revocation of driving privileges following a conviction for a felony vehicular offense, and ORS 811.812(3)(c) (1997) penalizing a later violation of the revocation so ordered. The state further argues, with some force, that the use of the term "punishable" rather than "punished" is important, because it suggests that the legislature was concerned with factual guilt of a felony vehicular offense rather than with the entry of a judgment legally adjudicating it as a felony. *See Smith,* 298 Or at 181-82 (use of term "punishable" rather than "punished" contributed to conclusion that legislature did not intend impeachment for prior offenses to be limited to those offenses for which there was a formal judgment of conviction).

Although that argument makes sense, it also invites a further question: Why did the legislature use "felony conviction" in describing vehicular offenses that require revocation or suspension, while using "punishable as a [vehicular]

---

[5] ORS 811.182(3)(c) (1997) elevated the offense of DWS to a Class C felony if the suspension or revocation resulted from "[a]ny crime punishable as a felony with proof of a material element involving the operation of a motor vehicle." In 1999, the legislature amended that statute. Or Laws 1999, ch 1049, § 7. ORS 811.182(4)(g) (1999) now provides that the same offense is a Class A misdemeanor if it results from "a suspension resulting from any crime punishable as a felony with proof of a material element involving the operation of a motor vehicle[.]" Neither party addresses the effect of that change. In all events, the amendment does not apply in this case.

felony" in describing the penalty for violating those same revocation or suspension orders? Neither party has examined the former versions of the statutes, which are part of their relevant context, in an effort to answer that lurking question. *SAIF v. Walker*, 330 Or 102, 109, 996 P2d 979 (2000); *PGE*, 317 Or at 611. We therefore have done so.

That examination is not conclusive, but it is illuminating. Before 1985, ORS 809.410(4) and ORS 811.175(4)(c) (1985), the predecessor to ORS 811.182(3)(c) (1997), contained identical language, with both statutes referring to "[a]ny crime punishable as a felony with proof of a material element involving the operation of a motor vehicle." Or Laws 1983, ch 338, §§ 353, 598.[6] The language in ORS 809.410(4) was changed in 1985. The legislature at that time deliberately struck the "punishable" terminology and inserted the word "conviction," so that it provided for automatic suspension or revocation for a vehicular "felony conviction" rather than a vehicular "crime punishable as" a felony. Or Laws 1985, ch 669, § 2a.

■     The change is significant because new language in a statute ordinarily signals a change in the statute's meaning. *State v. Click*, 305 Or 611, 616 n 5, 755 P2d 693 (1988). Here, we have no reason to conclude otherwise. Unlike the 1983 revision of the entire Motor Vehicle Code, the 1985 amendments were not preceded by the legislature's disclaimer that it intended no substantive change. *See State v. Tarpley*, 157 Or App 693, 701, 972 P2d 1201 (1998), *rev den* 328 Or 465 (1999) (describing legislature's determined efforts to ensure that 1983 revision was not substantive). Without such a disclaimer, the legislature's deliberate decision to eliminate "punishable" from the former version of ORS 809.410(4) and replace it with the current language suggests a substantive change.[7] In that event, the legislature's failure to change the

---

[6] Indeed, both statutes had essentially that same language even before the comprehensive 1983 reorganization of the Motor Vehicle Code. *See former* ORS 482.430(1)(c) (1981) (the predecessor to ORS 809.410(4)); *former* ORS 487.560(6)(b) (1981) (the predecessor to ORS 811.182(3)(c) (1997)). The 1983 revisions, although rewording the provisions slightly, retained the key "punishable as a felony" language.

[7] Were there doubt about that fact, the legislative history makes it clear that the bill that brought about the change in wording was at least intended generally to accomplish substantive changes. Throughout the bill's progress through the

parallel language in ORS 811.182(3)(c) may reflect nothing more than its failure to make a conforming amendment to the complementary punishment provision.

That leaves us, then, with a conclusion that the language "felony conviction" in ORS 809.410(4) was deliberately chosen over "punishable as a felony." In turn, that fact suggests, but does not necessarily confirm, that the legislature intended a revocation to follow from the entry of judgment rather than from the factual determination of guilt. We therefore conclude that the context and earlier versions of the statute are helpful, but not definitive, and we turn to the statute's legislative history. *See PGE*, 317 Or at 611-12 (if legislative's intent remains uncertain after examination of text and context, legislative history should be consulted).

The clues provided by legislative history in this instance are faint, but not entirely unhelpful. The change to "any felony conviction" from "punishable" as a felony was part of a more encompassing revision to the grounds for suspension and revocation generally. The legislative history reflects that, overall, the revision was designed to avoid suspending or revoking driving privileges as a consequence for more minor traffic offenses, because doing so had clogged the courts with violation charges and also had diluted the perceived seriousness of the offense on the part of prosecutors and courts alike.[8] Beyond that more general purpose of the 1985 changes as a whole, however, we found no helpful discussion of the changes made to the wording of subsection (4) of ORS 809.410 in particular.

■ Under *PGE*'s interpretative methodology, we have one final tool we may use in attempting to determine the legislature's intention: general maxims of statutory construction. *PGE*, 317 Or at 612. Applicable here is the maxim that

---

legislative process, the staff measure analyses explained that, although some of the amendments were of a "housekeeping" nature, the bill also was designed to bring about significant revisions to hearing procedures on suspensions and revocations and to change when suspensions would be used as a traffic offense enforcement tool. *See, e.g.*, Staff Measure Analysis for Judiciary Committee, SB 123, June 15, 1985.

[8] *See generally* Staff Measure Analysis, Senate Judiciary Committee, SB 123, March 28, 1985, April 2, 1985, June 4, 1985, and June 6, 1985; Minutes, Joint Sub-Committee on the Motor Vehicle Code Revision, February 25, 1985, 5-6.

civil disabilities or penalties are to be strictly construed and, in the absence of an unequivocal policy to the contrary, a conviction triggers such a disability "only after a determination of guilt and a pronouncement of the judgment of the court." *Vasquez*, 272 Or at 480 (citing cases for and endorsing majority view). As we recently concluded, a suspension or revocation of a criminal defendant's driving privileges is remedial in nature, rather than strictly punitive, and is a disability imposed to ensure the general safety and well-being of the public. *Mannelin v. DMV*, 176 Or App 9, 19-20, 31 P3d 438 (2001). Even if suspension or revocation is not, technically speaking, a *civil* disability, it is analogous to one, given its remedial purpose. The maxim of construction endorsed in *Vasquez* therefore adds force to the conclusion that a conviction here requires not only a factual determination of guilt of the felony vehicle offense, but also a pronouncement of judgment of such.

Thus, what we have so far is a statute, ORS 809.410(4), with ambiguous terms; context that does little to clarify it; a prior version of the statute that reflects a deliberate legislative choice to have a revocation follow from the fact of "conviction" rather than guilt of a vehicular offense "punishable" as a felony; a suggestion in the legislative history that the change to the term "conviction" was part of an overall effort to reduce the use of revocations and suspensions for more minor offenses; and a general maxim of construction that applies in favor of interpreting "conviction" to mean a pronouncement of judgment. None of those considerations removes all doubt as to the legislature's intended meaning. But the analysis does consistently favor only one of the two possible interpretations, namely, that the reference to "felony conviction" should be interpreted to mean judgment of conviction. At a minimum, ORS 809.410(4) cannot be said to embody a clear policy choice that revocation should result from a finding of guilt by plea or by verdict, as opposed to the judgment of conviction.

We have yet, however, to consider the policy embodied in ORS 809.410(4) in conjunction with ORS 161.705(1), the statute authorizing misdemeanor treatment for Class C felonies. Doing so brings this case squarely within the rationale of the Supreme Court's decision in *Sonderen*. There, the

court concluded that the language of ORS 161.705 reflected a clear policy choice "to allow persons convicted of certain felonies to avoid not only the immediate consequences of a felony conviction, such as sentencing, but also other disabilities that may arise as a result of having been convicted of a felony." *Sonderen*, 303 Or at 134. That understanding influenced the court's interpretation of ORS 9.527(2), the attorney discipline statute that authorizes the Supreme Court to discipline a bar member who has been convicted of an offense, which is "a felony under the laws of this state." The court held that, when a felony conviction has been reduced to a misdemeanor pursuant to ORS 161.705(1), it no longer is a felony conviction for purposes of the attorney discipline statute. The court reasoned:

"We have found no legislative history indicating that the legislature intended to omit attorney discipline matters from the otherwise ameliorating effect of [ORS 161.705]. To hold that the conviction remains a felony for these purposes would circumvent the statutory purpose."

*Id.*

Revocation of driving privileges is a disability—albeit one that is remedial in nature—that arises as a result of having been convicted of a felony. *See Mannelin*, 176 Or App at 19-20. It therefore falls squarely within the policy of ORS 161.705(1) and is a disability that a convicted defendant is entitled to avoid if a trial court chooses to enter judgment of conviction as a misdemeanor. Thus, consistent with the Supreme Court's approach in *Sonderen*, when a felony vehicular offense is reduced to a misdemeanor, the defendant's driving privileges should not be revoked unless our examination of ORS 809.410(4) persuades us that the legislature intended that result despite the misdemeanor treatment of the offense. In this case, that would require us to conclude that the legislature intended revocation to follow from a finding of guilt by plea or verdict, rather than from the legal adjudication of what conviction is appropriate to enter by way of judgment. Here, as we have explained, no such policy choice is reflected in ORS 809.410(4). The intended ameliorating

effect of reducing defendant's felony offense to a misdemeanor under ORS 161.705(1) therefore should take precedence. *Compare Sonderen*, 303 Or at 134 (finding no such policy and therefore holding that felony conviction reduced to a misdemeanor should be treated as such for bar disciplinary purposes) *with Smith*, 298 Or at 181-82 (finding clear legislative policy in impeachment statute that impeachment could be based on acts committed, not just judgment of conviction; thus misdemeanor treatment of felony conviction did not preclude impeachment use of conviction). Thus, defendant's UUV conviction was no longer a felony conviction for purposes of ORS 809.410(4), and revocation of his driving privileges was not authorized.

In review, we hold that, when a trial court reduces a conviction for a felony vehicular offense to a misdemeanor judgment pursuant to ORS 161.705(1), the conviction is not a felony conviction for purposes of the revocation provisions of ORS 809.410(4). As a result, in sentencing defendant on his underlying offense, the trial court in that case was not authorized to suspend defendant's driving privileges. The suspension was therefore invalid, as the trial court below concluded. The trial court therefore correctly excluded evidence of the suspension in defendant's trials for FDWS.

Affirmed.