Argued and submitted December 23, 2004, reversed and remanded May 11, 2005

# STATE OF OREGON,
## *Appellant,*

*v.*

# ANTHONY BURKE JONES,
## *Respondent.*

### 200210573; A119310

112 P3d 356

Patrick G. Ward, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Rankin Johnson IV, Deputy Public Defender, argued the cause for respondent. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant was charged with felony driving while suspended under ORS 811.182(3). A person commits a felony under ORS 811.182(3) if a person drives a motor vehicle on a highway during a time period when the person's driving privileges or the right to apply for driving privileges has been suspended or revoked and the prior suspension was based on a conviction for an enumerated crime that was committed by the operation of a motor vehicle.[1] In the trial court, defendant moved before trial to exclude evidence of the prior suspension of defendant's driver's license by the Driver and Motor Vehicle Services Division of the Department of Transportation (DMV) on the basis that the suspension was unlawful. The trial court granted defendant's motion, and the state appeals that ruling. ORS 138.060. We reverse.

The following facts are derived from the exhibits that were attached to defendant's motion, facts that the parties appear to embrace and do not contest for purposes of defendant's pretrial motion. In 2001 defendant was charged in Coos County with two counts of assault in the third degree "by means of a Yamaha 4-wheeler, a dangerous weapon[,]" and one count of driving while under the influence of intoxicants (DUII). Defendant entered into a plea agreement with the state in which he agreed to plead guilty to DUII and to assault in the fourth degree as a lesser included offense of one of the assault in the third degree counts. Pursuant to the agreement, defendant admitted in court that he recklessly caused serious physical injury to the victim. Defendant did not admit that he was operating a motor vehicle at the time that he committed the assault. The trial court thereafter stated, during the hearing on the change of plea, "On that Count I, I'll change that so it's clear on the record the charge of Assault in the Fourth Degree, I deleted all the words after [the victim's name]." The effect of the court's ruling was to strike the language in the charging instrument alleging that

---

[1] ORS 811.182(3) provides that "[t]he crime is a Class B felony if the suspension or revocation resulted from any degree of murder, manslaughter, criminally negligent homicide or assault resulting from the operation of a motor vehicle or if the revocation resulted from a conviction for felony driving while under the influence of intoxicants."

defendant committed assault in the third degree by means of "a Yamaha 4-wheeler, a dangerous weapon[.]"

Subsequently, in an order dated November 14, 2001, DMV suspended defendant's driving privileges and his right to apply for driving privileges because "you were convicted of Assault 4 resulting from the operation of a motor vehicle." The notice of suspension also stated,

> "The issues [on administrative review of the order of suspension] are limited to: * * * C. Whether or not your suspension or revocation resulted from a conviction for an offense which involved the operation of a motor vehicle and the department's action is permitted only if the offense involves a motor vehicle."

Defendant did not request administrative review of DMV's November 14, 2001, order.

In May 2002, defendant was indicted in Lane County on the charge in this case for operating a motor vehicle on a public highway during a period when his license to drive a motor vehicle and his right to apply for a driver's license was suspended pursuant to DMV's November 14, 2001, order. Defendant moved *in limine* to exclude evidence of the suspension order on the ground that his Coos County conviction for assault in the fourth degree did not include a determination that he was operating a motor vehicle on premises open to the public when the assault occurred. The trial court's order granting defendant's motion provides:

> "The Court having found that defendant's driving privileges were suspended by the Department of Motor Vehicles pursuant [to] the notice dated November 14, 2001, which is attached as Exhibit 'C' to defendant's Motion in Limine. The Court finds that this suspension was unlawful since the trial court's Notice of Suspension or Revocation in Coos County Circuit Court Case 01CR1465, State's Exhibit 2, was not supported by language in the Assault in the Fourth Degree pleading alleging that the assault resulted from the operation of a motor vehicle.

> "Accordingly, defendant's Motion in Limine is granted and evidence of the suspension of defendant's driving privileges pursuant to said notice dated November 14, 2001, is inadmissible at trial in the above entitled matter."

On appeal, the state argues that defendant cannot collaterally attack DMV's suspension based on the Coos County conviction in this proceeding. It relies on *State v. Sims*, 335 Or 269, 66 P3d 472 (2003), a case decided after the trial court's decision in this case. The state concedes that it did not argue to the trial court that defendant was prohibited from collaterally attacking the suspension, but it asks us to review the issue as error apparent on the face of the record. ORAP 5.45(4). In particular, the state relies on the rule in *State v. Jury*, 185 Or App 132, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003), which held that a later decision by an appellate court can be the basis for determining that error apparent on the face of the record occurred in a trial court. Alternatively, the state argues that DMV's suspension order was properly based "on the record of conviction that it received from the trial court" under *former* ORS 809.410(38)(a) (1999), *repealed by* Or Laws 2003, ch 402, §§ 6a, 43, an argument that it did make in the trial court.

In response, defendant first asserts that the trial court's order is not appealable because it resulted from a motion *in limine* to suppress evidence. Alternatively, defendant argues that the record does not demonstrate an error apparent on the face of the record, that *Sims* is not controlling, and that, regardless, the trial court ruled correctly that DMV lacked authority to suspend defendant's license because he was not convicted of an offense that involved the use of a motor vehicle.

■ We first consider whether ORS 138.060 authorizes the state to appeal the trial court's order. ORS 138.060(1)(c) provides, in part, that the state may appeal "[a]n order made prior to trial suppressing evidence[.]" According to defendant, the reference in the statute to "suppressing evidence" is a term of legal art that refers only to the suppression of unlawfully obtained evidence and therefore is inapplicable to the circumstances of this case. However, in *State v. Koennecke*, 274 Or 169, 545 P2d 127 (1976), the Supreme Court interpreted the same statutory language to encompass a ruling by a trial court that the testimony of police officers was inadmissible because of their failure to deliver their service revolvers to the defendant's attorney for discovery purposes. Adopting our reasoning in *State v. Hoare*, 20 Or App 439, 532 P2d 240

(1975), that the language in the statute was broader in scope than that proposed by the defendant, the *Koennecke* court concluded, "[W]e also believe that the application of this rule is not limited to cases in which an order to suppress evidence has been the result of an objection by the defendant to evidence in advance of trial" and that "the order suppressing the testimony of the two police officers in this case was an order 'suppressing evidence' under ORS [138.060(1)(c)]." *Koennecke*, 274 Or at 173. Similarly, we conclude that the scope of the statute is not confined to the suppression of evidence seized unlawfully and that the trial court's order excluding evidence of DMV's suspension order constituted the "suppression of evidence" within its terms.

■ ■    We next consider whether we will review as error apparent on the face of the record the state's unpreserved claim of error that defendant cannot collaterally challenge DMV's order. An appellate court may review an unpreserved error as plain error if (1) the error is an error of law, (2) the error is obvious and not reasonably in dispute, and (3) the error appears on the face of the record in the sense that the reviewing court need not go outside the record to identify it. Even if those requirements are met, an appellate court still must determine whether to exercise its discretion to review the claim of error and explain its reasons for doing so. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991).

In light of those requirements, we turn to the state's reliance on *Sims*. In that case, the defendant was convicted of felony driving while revoked. In the trial court, the defendant moved to dismiss the charge and moved to exclude evidence, challenging the validity of a ten-year-old administrative order revoking his driver's license. The trial court denied the defendant's motions, concluding that the defendant could not collaterally attack the validity of the prior order in the proceeding before it. The defendant appealed, and we reversed. On review, the Supreme Court agreed with the trial court. It reasoned that the legislature did not intend that the state be required to prove the validity of the prior order in light of the elements of ORS 811.182 (1997)[2] that only required proof that DMV had revoked defendant's license based on a prior

_____

[2] ORS 811.182 (1997) was amended in 1999, 2001, and 2003.

suspension order as a habitual traffic offender and that he drove a motor vehicle at a time when the revocation order was in effect. In the state's view, *Sims* constitutes a subsequently decided precedent by an appellate court that plainly makes the trial court's ruling in this case error.

Defendant counters that the holding in *Sims* is specific to its facts and the statute under which it was decided. He notes that the *Sims* court did not overrule its decision in *State v. Tooley*, 297 Or 602, 687 P2d 1068 (1984), which had permitted a collateral attack on a prior suspension order where the issue was whether the notice of the suspension order to the defendant was defective and whether the defendant was denied adequate notice of a prerevocation hearing. Indeed, the *Sims* court, in explaining why its decision in *Tooley* was not controlling, said,

> " 'This court's holding in *Tooley* is a limited one and does not provide support for the kind of collateral attack on the HTO [habitual traffic offender] revocation order that defendant seeks in this case. That is so because, unlike the defendant in *Tooley*, defendant does not argue that the notice of his license revocation was defective or that he was denied a prerevocation hearing.
>
> "To reiterate, *Tooley* does not authorize, in every case, a collateral attack on the administrative order underlying a criminal prosecution from driving with a suspended or revoked driver license. A criminal defendant's ability to attack collaterally the validity of an underlying suspension or revocation order must arise from the legislature's intent to permit such an attack."

*Sims*, 335 Or at 275.

In light of the above decisions and the language of the statute applicable to this case, we are not persuaded that the claimed error is obvious and not reasonably in dispute so as to permit us to review the state's assignment of error as error apparent on the face of the record. The question, when appropriately framed under the holding in *Sims*, is whether the legislature intended to permit a collateral attack on DMV's suspension order under the circumstances of this case. The state indicted defendant under ORS 811.182(3) (2001).[3] That statute, as it was applied to defendant, required

---

[3] ORS 811.182 (2001) was amended in 2003.

the state to prove that "the suspension or revocation resulted from any degree of * * * assault resulting from the operation of a motor vehicle[.]" In comparison, the statute at issue in *Sims* was ORS 811.182 (1997), which provided that the crime was a Class C felony if the underlying suspension or revocation "resulted from * * * [h]abitual offender status under ORS 809.640." In the process of discerning the legislature's intent regarding ORS 811.182 (1997), the *Sims* court observed,

> "The text of ORS 811.182 (1997) does not require the state, in prosecuting a charge of felony DWR [Driving while Revoked], to consider, much less prove, the validity of defendant's HTO revocation order. Nor does it provide defendant with an affirmative defense based on proof of the order's invalidity. Instead, the statute requires the state to prove only that (1) [DMV] had revoked defendant's license based on his HTO status; and (2) defendant drove a motor vehicle when the revocation order was in effect."

*Sims*, 335 Or at 273-74 (footnote omitted).

As the above comparison demonstrates, the language of ORS 811.182(3) (2001) is qualitatively different from the language of ORS 811.182(3)(a) (1997) in what it requires the state to prove. Under the latter statute, the requirements that the state had to prove were clear on the face of the statute, and the statute did not provide defendants with an affirmative defense based on the HTO's order's invalidity. In effect, the state had to prove only that the revocation resulted from a "status" that the agency had previously determined.

In contrast to the requirement of proof of a previously determined status, ORS 811.182(3) (2001) requires the state to prove that the underlying suspension resulted from particular factual circumstances, *i.e.*, from an assault that involved the operation of a motor vehicle. A defense to such an allegation in a criminal case could be that the assault alleged did not involve the use of a motor vehicle. That the legislature intended that DMV's determination of that factual issue be binding in the event of a subsequent criminal prosecution is not apparent from the face of ORS 811.182(3). While it may be possible to deduce such an intention from the

language of the statute, it is also possible to reason from the statute's language that the legislature intended that DMV's determination constituted *prima facie* evidence of defendant's assaultive conduct involving the operation of a motor vehicle and that a defendant could defend on the ground that the administrative record was inaccurate.

Given the difference in the requirements of the statute involved in *Sims* and the statute in this case, we do not agree with the state that the holding in *Sims* makes the trial court's ruling error apparent on the face of the record. Because the state failed to preserve the issue whether defendant is barred from making a collateral attack against the suspension order in the trial court and because the issue raised by that claim of error is not plain error, we decline to review it. ORAP 5.45.[4]

■    The state's alternative argument is that "[e]ven if this court finds that *Sims* is not applicable to this case, DMV appropriately suspended defendant's driving privileges because it learned, from the record of conviction, that defendant had committed an assault that resulted from the use of a motor vehicle." According to the state, DMV was authorized and required by the governing statute to suspend defendant's driving privileges after it received his record of conviction for assault in the fourth degree from the Coos County Circuit Court, and the trial court erroneously based its ruling on the fact that the Coos County Circuit Court struck the allegation that the assault resulted from the use of a motor vehicle from the charging instrument. Defendant counters that we should conclude that the trial court ruled correctly.

■    In our view, the trial court's ruling creates a limitation on DMV's authority that does not exist in the statute governing DMV's authority. The statute governing DMV's authority to suspend defendant's driving privileges in November 2001 was *former* ORS 809.410(38)(a) (1999). It provided,

---

[4] *See also State v. Rodarte,* 178 Or App 173, 35 P3d 1116 (2001) (state did not challenge the defendant's ability to collaterally attack the validity of the underlying administrative order because the issue was not raised in the trial court).

"Assault in the second, third or fourth degree resulting from the operation of a motor vehicle constitutes grounds for suspension of driving privileges. Upon receipt of a record for assault in the second, third or fourth degree, the department shall suspend the driving privileges or right to apply for driving privileges of the person convicted."

To discern the legislature's intent in promulgating a statute, we apply the usual rules of statutory interpretation by considering the text and context of the statute and giving its words their ordinary meaning unless another meaning is indicated.

The word "record" in the statute means "an official contemporaneous document recording the acts of some public body or public officer." *Webster's Third New International Dictionary* 1898 (unabridged ed 2002). The word "receipt" in the statute means "the act or process of receiving." *Webster's* at 1894. Thus, the words "receipt of a record" in the statute, when applied to the circumstances of this case, refer to the Coos County Circuit Court record received by DMV. Significantly, there is no language in *former* ORS 809.410(38)(a) (1999) that limits DMV's authority in issuing a suspension to allegations that appear on the face of the charging instrument, and we decline to insert such a limitation by judicial fiat. ORS 174.010. Rather, based on the language of the statute, it appears that the legislature intended that DMV could draw its initial conclusion about whether the assault resulted from the operation of the motor vehicle from the official record conviction forwarded by the court and, if defendant disagreed, he was entitled to administrative review of that issue. It follows that we disagree with the trial court's reasoning that, because the Coos County Circuit Court struck the language from the charging instrument alleging that defendant committed the assault by use of a motor vehicle, DMV had no authority to suspend his driving privileges.

We reject defendant's other arguments without discussion. We are not persuaded that any discussion would be beneficial to the bench and bar in light of the manner in which the record was developed below and because the trial court ruled solely on the basis described above and therefore has not had an opportunity to rule on the basis of a fully developed record. To summarize: whether defendant is

barred from making a collateral attack against DMV's administrative order is an issue that we do not decide because it is not properly before us. The trial court's ruling that DMV lacked authority to suspend defendant's driving privileges on the basis of the Coos County Circuit Court's action of striking the allegation in the charging instrument about defendant's use of a motor vehicle was error. However, our ruling does not prohibit the parties on remand from litigating the issue of whether, under the circumstances of this case, defendant can make a collateral attack against DMV's order and whether the record of conviction received by DMV from the Coos County Circuit Court contained information that permitted DMV to determine that defendant was convicted of assaulting the victim by the use of a motor vehicle.[5]

Reversed and remanded.

---

[5] For instance, it does not appear from the exhibits offered that the parties focused in the trial court on the information that DMV received from the record, as the statute required. Rather, they focused on what occurred in the underlying trial court proceeding. It would not necessarily follow that everything that occurred in the trial court proceeding would have been transmitted as part of the court record to DMV.