No. 911 December 18, 2024 873

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH ADAM SCHRINER,
*Defendant-Appellant.*

Washington County Circuit Court
20CR68224; A179760

Theodore E. Sims, Judge.

Submitted September 27, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah De La Cruz, Deputy Public Defender, Office of Public Defense Services/Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jennifer S. Lloyd, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Affirmed.

**MOONEY, S. J.**

Defendant appeals the judgment of conviction for unlawful use of a vehicle (UUV), entered after he admitted to having "knowingly operated a motorcycle" without the consent of the owner, in violation of ORS 164.135.[1] He assigns error solely to the court's order requiring the revocation of his driver's license, contending that ORS 809.409[2] does not apply to UUV because the "operation of a motor vehicle" is not a material element of that crime and, therefore, arguing that the order of revocation was not authorized. We affirm.

The sole dispute at sentencing was whether the court had the legal authority to order the revocation of defendant's driver's license. The state argued that ORS 809.409(4) requires revocation "upon receipt of the conviction for any felony where a material element involves the operation of a motor vehicle." Under that statute, the state contended, revocation of defendant's license was mandated because the state's theory of UUV and facts "involved the defendant's operation of a motor vehicle." Defendant objected, arguing that UUV does not have a material element of "operation of a motor vehicle" because the crime of UUV can be committed by conduct other than operating a motor vehicle. *See, e.g.*, ORS 164.135 (UUV committed if person "takes, operates, exercises control over or otherwise uses another's vehicle, boat or aircraft"). He asserted that the legislature, in enacting the licensing revocation statutes, would not have intended "to take a piecemeal approach" and require a trial court to "make a factual determination what specifically happened in each case to determine whether the license revocation applied." The trial court ordered the license revocation, finding that, although a person can commit UUV without operating a motor vehicle, defendant made a "specific admission and the facts support that he was actually operating this vehicle."

_____

[1] Defendant was also charged with one count of possession of a stolen vehicle, ORS 819.300, one felony count of fleeing or attempting to elude a police officer "while still in the vehicle," ORS 811.540(1)(b)(A), and one misdemeanor count of fleeing or attempting to elude a police officer after "get[ting] out of the vehicle," ORS 811.540(1)(b)(B). Those counts were dismissed when defendant changed his plea on the UUV count.

[2] Following the pertinent events in this case, ORS 809.409 was amended in ways that are immaterial to our analysis. *See* Or Laws 2023, ch 176, §1. We therefore refer to the current version of the statute throughout the opinion.

On appeal, defendant contends that the trial court erred in ordering his driver's license be revoked because whether a felony has a "material element involving the operation of a motor vehicle" under ORS 809.409(4) is determined by the statute defining the offense and not the facts of the case. He contends that the statutory elements of UUV do not include the "operation of a motor vehicle" and that the court therefore erred in revoking his driver's license based on his factual admissions. The state disagrees. It argues that both ORS 809.240 and ORS 809.409(4) permit the court to consider the factual circumstances of the conviction in making its determination. Consequently, the state argues that the court did not err in ordering the revocation of defendant's license based on his factual admissions to the offense of UUV, which included admitting that he "operated a motorcycle."

Both parties agree that the court's revocation authority is governed by ORS 809.240(1)(a) and ORS 809.409(4). The issue is whether the trial court had authority to order the revocation of defendant's license based on the facts supporting the conviction or whether its authority was instead limited to considering the elements of UUV as defined by the UUV statute—an issue of statutory construction. We, thus, "engage in our well-established methodology of considering the text in context and any helpful legislative history." *Bates v. Oregon Health Authority*, 335 Or App 464, 469, ___ P3d ___ (2024). We review for legal error. *See State v. Rodarte*, 178 Or App 173, 176, 35 P3d 1116 (2001) (reviewing for legal error whether the statutory predecessor to ORS 809.409(4) and ORS 809.240 authorized the trial court to revoke the defendant's driving privileges).

We begin with the text, which is the best evidence of the legislature's intent. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). ORS 809.240 requires a trial court to order the revocation of a person's driver's license under specified circumstances, providing as relevant here:

"(1)   *If a person is convicted of an offense that will result in mandatory suspension or revocation under ORS 809.409,* 809.411, 809.510 to 809.545 or 813.400 or any other law requiring suspension or revocation of driving privileges upon conviction of an offense, the trial judge shall:

"(a)   Order the revocation or suspension at the time of conviction for the required period[.] ***."

ORS 809.240(1)(a).

ORS 809.409 requires the Department of Transportation (ODOT) to revoke a person's driver's license under specified circumstances, providing as relevant here:

"(1)(a)   Upon receipt of a record of conviction of an offense described in this section, the Department of Transportation shall revoke the driving privileges of the person convicted.

"* * * * *

"(4)   The department shall take action under subsection (1) of this section *upon receipt of a record of conviction of any felony with a material element involving the operation of a motor vehicle*."

ORS 809.409(1), (4).

The parties' dispute implicates the emphasized phrases. Defendant argues that ORS 809.409(4) plainly requires the felony offense to include a "material element" of "the operation of a motor vehicle." Relying on dictionary definitions of "material" and "element," he contends "material element" refers to the important and essential parts of the crime, which is consistent with its legal usage as referring to the required elements of an offense that the state must prove beyond a reasonable doubt to sustain a conviction. He contends that the inclusion of "with a material element" supports the legislative intent to require the determination under ORS 809.409(4) to be the same as that required for determining whether a material element requires a culpable mental state, which is purely legal and based on the statutory elements of the offense. *See, e.g.*, *State v. Reynolds*, 183 Or App 245, 250, 51 P3d 684, *rev den*, 335 Or 90 (2002) ("We conclude that a 'material element,' as that term is used in ORS 132.540(2), refers to an element that is necessary to state the crime charged; if, when the element is struck, the indictment still states the crime charged, then the element is not 'material' within the meaning of the statute."); *State v. Prophet*, 318 Or App 330, 336, 507 P3d 735, *rev den*, 370 Or 472 (2022) ("[A] culpable mental state is required for

each material element of the crime except for those relating to the statute of limitations, jurisdiction, venue, and the like.").; *State v. Arriaga-Mendoza*, 316 Or App 667, 669, 504 P3d 703 (2021), *rev den*, 369 Or 733 (2022) ("Whether an element is material is a legal question."). Further, defendant contends that the statutory offense of UUV is not a "felony with a material element involving the operation of a motor vehicle" under ORS 809.409(4) because the statutory offense of UUV applies to broader conduct than just the "operation" of a motor vehicle, and applies to a "vehicle, boat or aircraft" and not a "motor vehicle." In his view, the latter is an important distinction because a "vehicle" for purposes of UUV does not need to be self-propelled, whereas a "motor vehicle" under the vehicle code requires self-propulsion.

		The state begins with the text of ORS 809.240(1), contending that it shows that the court is obligated to determine whether a person has been "convicted of an offense that will result in mandatory suspension or revocation" under ORS 809.409, which requires it to order revocation if it makes the requisite findings under ORS 809.409(4). It argues that nothing in the text of ORS 809.240 limits the sources of information that a court may consider in making its determination and that defendant's argument, which limits the court's consideration to the statutory elements of the offense, reads language into the statute that is not there.

		As to ORS 809.409(4), the state does not dispute defendant's proposed meanings of "material" or "element" but contends that neither resolves what it means to be a material element "involving" the operation of a motor vehicle. The state argues that the dictionary definitions of "involving" are too broad to be helpful. However, it argues that other statutes that include an element requiring proof of certain conduct provide contextual support that the legislature's use of "involving" in the phrase "involving a material element" contemplated a more fact-based assessment of the conduct supporting the defendant's conviction. *See, e.g.*, ORS 166.255 (a "qualifying misdemeanor" is one that "has, as an element of the offense, the use or attempted use of physical force or the threatened use of a deadly weapon").

Finally, the state contends that the different roles for the trial court and ODOT under the statutory scheme—the trial court must determine whether suspension or revocation is required and, if it is, order revocation and forward a "record of conviction" to ODOT, which ODOT then relies on in implementing any suspension or revocation—supports that the trial court's finding is a factual one that is not dictated by the statutory elements of the offense. We agree.

A court is required under ORS 809.240(1) to order a license suspension or revocation if the circumstances provided for in the statute exist—that the person "is convicted of an offense that will result in mandatory suspension or revocation under ORS 809.409." The inclusion of "will result" shows that the court's determination is prospective and based on whether ODOT will be required under ORS 809.409 to effectuate the suspension or revocation. ORS 809.240 does not itself expressly limit what the court must consider. However, because the court's determination is based on what ODOT must do under ORS 809.409, that statute necessarily also governs what the court may consider in making its determination under ORS 809.240. We therefore turn to the text of ORS 809.409(4).

Under ORS 809.409(4), the parties' dispute implicates the meaning of the phrase "upon receipt of a record of conviction of any felony with a material element involving the operation of a motor vehicle." However, because the parties' textual arguments focus on "with a material element involving the operation of a motor vehicle," we begin there.

The terms "material" and "element" have relevant common meanings. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) ("[W]ords of common usage typically should be given their plain, natural, and ordinary meaning."). The relevant common meanings of "material" are "being of real importance or great consequence," "requiring serious consideration by reason of having a certain or probable bearing on the proper determination of a law case," "ESSENTIAL," and "RELEVANT, PERTINENT." *Webster's Third New Int'l Dictionary* 1392 (unabridged ed 2002). "Element" means "one of the constituent parts, principles, materials, or traits of anything." *Id*. at 734. The

common meaning of those terms is consistent with their legal usage. *See Ogle v. Nooth*, 355 Or 570, 578, 330 P3d 572 (2014) ("[W]hen words are used in the context of a legal proceeding * * * they may be used as legal terms of art, and, if so, we give precedence to their legal meanings."). In that context, "material" is defined as "[h]aving some logical connection with the consequential facts" and "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential." *Black's Law Dictionary* 1166-167 (12th ed 2024). "Element" is defined as "[a] constituent part of a claim that must be proved for the claim to succeed." *Id.* at 656. Similarly, "elements of crime" means "[t]he constituent parts of a crime—usu[ally] consisting of the actus reus, mens rea, and causation—that the prosecution must prove to sustain a conviction." *Id.* Those definitions support that "material element" refers to one of the necessary elements of the statutory offense.

However, because the text describes the "material element" as one "involving the operation of a motor vehicle," the meaning of "involving" and "the operation of a motor vehicle" inform our understanding of "material element" as used in ORS 809.490(4). The common meaning of "involve" is "to relate closely : CONNECT, LINK," "to require as a necessary accompaniment : ENTAIL, IMPLY," "to have an effect on : concern directly : AFFECT." *Webster's* at 1191. If those were the only definitions, that would suggest that the inclusion of a material element "involving" the operation of a motor vehicle is intended to describe a factual circumstance—the operation of a motor vehicle—that is closely related to one of the material elements of the statutory offense. However, another relevant definition of "involve" is "to have within or as part of itself : CONTAIN, INCLUDE," *id.*, which would also support that one of the required elements of the crime must be the "operation of a motor vehicle." The dictionary definitions do not resolve the parties' dispute because either party's construction is plausible when applying them.

That textual ambiguity is resolved by context informing the meaning of "upon receipt of a record of conviction" and "operation of a motor vehicle" under ORS 809.409(4). *See State v. Fries*, 344 Or 541, 546, 185 P3d 453

(2008) (context determines which of multiple definitions is the one the legislature intended). To that end, *Rodarte*, 178 Or App 173, and *State v. Jones*, 199 Or App 424, 112 P3d 356 (2005), *rev den*, 340 Or 34 (2006) (*Jones I*), are instructive.

In *Rodarte*, we addressed the meaning of the phrase "upon receipt of a record of conviction" as used in *former* ORS 809.410(4) (1999), *repealed by* Or Laws 2003, ch 402, §§ 6a, 43, which was the statutory predecessor to ORS 809.409(4). The issue in *Rodarte* was whether *former* ORS 809.410(4) (1999) authorized suspension of a driver's license where the defendant's felony conviction for UUV was subsequently reduced to a misdemeanor pursuant to ORS 161.705. *Former* 809.410(4) (1999) contained materially identical language to ORS 809.409(4), providing that ODOT "shall revoke" the driving privileges of a person "[u]pon receipt of a record of conviction for an offense described in this subsection," including "[a]ny felony conviction with proof of a material element involving the operation of a motor vehicle."[3] *Former* 809.410(4) (1999). We explained in *Rodarte* that the phrase "record of conviction" under *former* 809.410(4) (1999) refers to ORS 810.370, "which expressly describes what records a court is to provide to [ODOT] for vehicle code offenses." 178 Or App at 178. ORS 810.370 has not been amended since *Rodarte*, and it provides:

"(1)   Within the time required by this section of the conviction, every court with jurisdiction over the offenses described in this section shall forward to the Department of Transportation a *record of the conviction* of any person in such court for a violation *of any of the following that regulate the operation of motor vehicles* on highways or streets:

"(a)   Offenses committed under the vehicle code or any other statute of this state.

"(b)   Offenses committed under any municipal ordinance.

---

[3]   The disputed phrase in the current statute refers to "*any felony with a material element* involving the operation of a motor vehicle," ORS 809.409(4), while *former* ORS 809.410(4) (1999) referred to "*[a]ny felony conviction with proof of a material element* involving the operation of a motor vehicle." (Emphases added.) We do not address those statutory changes, because neither party relies on them and those changes would not likely alter our analysis.

"(2)   To comply with this section, a court must *forward the record of conviction containing the date of any offense, any arrest and conviction*. The record must be forwarded to the department within 24 hours of the time the defendant was sentenced by the court."

ORS 810.370(1), (2) (emphases added). In *Rodarte*, based on ORS 810.370(2) requiring a trial court to forward "the record of conviction containing the date of any offense, any arrest, and conviction," we summarized a "record of conviction" as used in *former* ORS 809.410(4) (1999) as "akin to an abstract of the charge and conviction, and not merely the judgment." 178 Or App at 178 (quoting ORS 810.370(2)).

*Rodarte* and ORS 810.370 provide meaningful context for construing the disputed phrase in this case, in two ways. First, they establish that the "record of conviction" under ORS 809.409(4) constitutes the records that ORS 810.370 requires the court to send to ODOT, which will include at a minimum "the date of the offense, any arrest and conviction." Those are facts that go beyond the statutorily described elements of the offense. It follows that the court's determination under ORS 809.240 and ORS 809.409(4) is likewise not limited to the statutorily described elements of the offense.

Second, ORS 810.370 provides important context for understanding the phrase "operation of a motor vehicle" as used in ORS 809.409(4). *See State v. Carr*, 319 Or 408, 411-12, 877 P2d 1192 (1994) ("Context includes other related statutes."). Under ORS 810.370, the description of the offenses that trigger a court's obligation to forward the record of conviction includes violations of "any other statute of this state" that "regulate the operation of motor vehicles." That supports that a license revocation or suspension can be based on the violation of a type of offense that regulates the operation of motor vehicles and not necessarily that the offense must have a material element described as "the operation of a motor vehicle," as defendant's construction proposes. At a minimum, we understand from *Rodarte* and ORS 810.370 that a court is permitted, under ORS 809.240 and ORS 809.409(4), to consider the factual record supporting the conviction, which is not limited by the statutorily described elements of the offense.

That construction is supported by *Jones I*. There, ODOT[4] ordered the suspension of the defendant's driving privileges on the ground that he was "convicted of Assault-4 resulting from the operation of a motor vehicle." 199 Or App at 427 (internal quotation marks omitted). Later, the defendant was charged with felony driving while suspended (DWS) under ORS 811.182(3) (2001) based on that prior suspension. *Id.* at 426 & n 1, 430 (under ORS 811.182(3) (2001), elevating the offense of DWS to a Class B felony if the prior suspension or revocation "resulted from" enumerated criminal offenses, including "assault resulting from the operation of a motor vehicle"). The defendant moved to exclude the prior suspension, imposed under *former* ORS 809.410(38)(a) (1999), *repealed by* Or Laws 2003, ch 402, §§ 6a, 43, as evidence in his prosecution for felony DWS, contending that the suspension had been unlawfully imposed.[5]

In *Jones I*, we construed the phrase "receipt of a record" under *former* ORS 809.410(38)(a) (1999), which is currently codified as ORS 809.411(9)(a). ORS 809.411 and ORS 809.409 are closely related, as both were previously codified under the same statutory provision, *former* ORS 809.410 (1999), and ORS 809.411 governs ODOT's authority to *suspend* a person's driver's license following a conviction, while ORS 809.409 governs ODOT's authority to *revoke* a person's driver's license following a conviction. *See* ORS 809.411; ORS 809.409. Further, the disputed phrase that we construed in *Jones I* under *former* ORS 809.410(38)(a) (1999) is nearly identical to its current codification, ORS 809.411. *See* ORS 809.411(1)(a) ("Upon receipt of a record of conviction for an offense described in this section, the Department of Transportation shall suspend the driving privileges of the person convicted."); ORS 809.411(9)(a) ("The

[4] In *Jones I*, we referred to ODOT by its branch, the Driver and Motor Vehicle Services Division of the Department of Transportation (DMV), that imposed the suspension order. 199 Or App at 426. However, for consistency throughout this opinion, we instead refer to DMV as ODOT. *See Smith v. DMV*, 141 Or App 67, 69 n 2, 917 P2d 28 (1996) (referring to DMV throughout the opinion as the "Department of Transportation" because "DMV is a branch of the Department of Transportation").

[5] We rejected the state's argument that the defendant could not collaterally attack the underlying suspension order in his criminal case, concluding that the argument did not satisfy the requirements for plain error review. *Jones I*, 199 Or App at 431-32.

department shall take action under subsection (1) of this section upon receipt of a record of conviction of assault in the second, third or fourth degree resulting from the operation of a motor vehicle."). Consequently, *Jones I*'s construction of "receipt of record" under what is currently ORS 809.411(9)(a) provides relevant context for construing that same phrase under ORS 809.409(4).

In *Jones I*, the facts of the criminal sentencing proceeding that resulted in the defendant's administrative license suspension showed that he was charged with driving under the influence of intoxicants (DUII) and assault in the third degree "by means of a Yamaha 4-wheeler, a dangerous weapon"; that he pled guilty to assault in the fourth degree as a lesser included offense of assault in the third degree and DUII; that he admitted to recklessly causing serious physical injury to the victim but did not admit to operating a motor vehicle at the time that he committed the assault; and that, as a result of those factual admissions, the court struck from the charging instrument the phrase "by means of a Yamaha 4-wheeler, a dangerous weapon." 199 Or App at 426-27 (internal quotation marks and brackets omitted). Based on that record of the sentencing proceeding, the defendant argued before the trial court in his prosecution for DWS that his assault conviction "did not include a determination that he was operating a motor vehicle" when the assault occurred, and therefore the order suspending his license had been unlawfully imposed. *Id.* at 427. The trial court agreed, finding that the prior sentencing court had struck "Yamaha 4-wheeler" from the charging instrument and therefore "[ODOT] had no authority later to suspend defendant's driving privileges." *State v. Jones*, 223 Or App 70, 73, 195 P3d 78, *adh'd to as modified on recons*, 224 Or App 451, 199 P3d 317 (2008), *rev den*, 346 Or 184 (2009) (*Jones II*).

The state appealed, contending that ODOT had correctly suspended the defendant's license because the record of conviction established that he "had committed an assault that resulted from the use of a motor vehicle." *Jones I*, 199 Or App at 432. Based on our construction of the phrase "receipt of a record," we agreed. *Id.* at 433. We concluded, based on the ordinary meaning of "record" and

"receipt," that "receipt of a record" under the circumstances of that case referred to the record that ODOT had received from the prior sentencing court. *Id.* at 433. We found significant that nothing in *former* ORS 809.410(38)(a) (1999) "limits [ODOT's] authority in issuing a suspension to allegations that appear on the face of the charging instrument," stating that the trial court's ruling "creates a limitation on [ODOT's] authority that does not exist in the statute." *Id.* at 432-43. We therefore reversed and remanded for reconsideration of "whether the entire record" before ODOT supported its suspension order. *Jones II*, 223 Or App at 74.

*Jones I* provides support for our construction of ORS 809.240 and ORS 809.409(4). Based on *Jones I*, ODOT's determination under ORS 809.411(9)(a) is based on the record of conviction that ODOT receives from the sentencing court and not just the charging instrument. That conclusion is also consistent with the *Rodarte* court's construction of "receipt of a record" under ORS 809.409(4). Under both *Jones I* and *Rodarte*, the determination of whether the offense requires suspension under ORS 809.411(9)(a), or revocation under ORS 809.409(4), is based on the factual record supporting the conviction and is not limited to the statutory element of the offense.

With that context, we understand the inclusion of "material element" in the disputed phrase to mean that the factual circumstance supporting the elements of the offense must be closely related to the operation of a motor vehicle. That construction is consistent with the statutory scheme authorizing the revocation or suspension of a driver's license for violation of any statutory provisions that "regulate the operation of motor vehicles" and based on the "record of conviction" that the sentencing court forwards to ODOT. ORS 810.370. Defendant's proposed construction, which would limit the revocation determination to considering only the statutorily described elements of the offense, is inconsistent with the statutory scheme as a whole and therefore implausible.

We conclude that the court's determination whether a qualifying conviction requires it to order the revocation of a person's driver's license must be based on the entire factual record supporting the conviction. Because it is undisputed

that defendant's factual admissions were sufficient to support his conviction for UUV, we conclude that the court did not err in ordering the revocation of defendant's license.

Affirmed.